CITY OF NEWTON & another *vs.* DEPARTMENT OF PUBLIC UTILITIES & another.[1]

Suffolk. January 6, 1975. — May 7, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, HENNESSEY, & WILKINS, JJ.

*Public Utilities,* Regulation. *Telephone Company. State Administrative Procedure Act. Administrative Matter. Notice. Equity Jurisdiction,* Public utilities. *Equity Pleading and Practice,* Intervention.

Where it appeared that the Department of Public Utilities conducted a series of hearings under G. L. c. 159, § 16, on the adequacy of service furnished by a telephone company and consolidated therewith a proceeding initiated by the mayor of a city under § 24, that the city participated actively in such proceedings by presenting evidence and cross-examining witnesses, and that the final decision of the Department was adverse to the city, it was held that the city had a statutory right under c. 30A, § 1 (3) (b), to participate in all such proceedings, was a "party" thereto, was "aggrieved" by the Department's decision, and had standing to appeal under c. 25, § 5. [672-675]

---

[1] The suit was brought both in the name of the city of Newton and the mayor of that city; the intervener is the New England Telephone and Telegraph Company.

On the record, the matter of rate rebates for poor service by a telephone company was involved in certain proceedings before the Department of Public Utilities and so was before this court on appeal under G. L. c. 25, § 5. [675-676]

The Department of Public Utilities has no authority to implement a rate rebate system as a remedy for inadequate service furnished by a telephone company. [676-680]

PETITION filed in the Supreme Judicial Court for the county of Suffolk on July 2, 1973.

The case was reserved and reported by *Wilkins*, J.

*Sanford A. Kowal* (*Jason A. Rosenberg*, Assistant City Solicitor, with him) for the city of Newton & another.

*Jeffrey J. Binder*, Assistant Attorney General, for the Department of Public Utilities.

*Paul B. Galvani* (*John H. Mason* with him) for New England Telephone and Telegraph Company.

HENNESSEY, J.   This case is before the court on a petition for judicial review pursuant to G. L. c. 25, § 5, of a final decision of the Department of Public Utilities (Department).   The appeals were filed in the county court; the single justice granted New England Telephone & Telegraph Company (Company) leave to intervene on the ground that the Department's decision was directed to the Company.   Subsequently the single justice reserved and reported all issues arising under the appeal for determination by the court on the pleadings and the record before the Department.

As will be seen, the principal issue raised in this case is whether the Department is vested with authority to order rate rebates for inadequate telephone service.   The Company argues that the Department has no such power; further, the Company says that the issue is not properly before this court in this case.   The Department and the city of Newton urge that the issue is properly before this court, and that we should resolve the issue. The Department states, however, that it believes it has no power to order such rebates.

We have concluded herein that the Department does not have the authority to order rate rebates for past inadequate telephone service. In reaching that conclusion, we have first determined that the city of Newton had standing to raise the issue, and that the issue is an appealable question in this case. We add that, even if we were to determine that the issue of rate rebates is not properly before us in this appeal, we would nevertheless be inclined to declare the rights of the parties as to that issue. See *Wellesley College* v. *Attorney Gen.* 313 Mass. 722, 731 (1943). The question is an important one to consumers, to the Company, and to the Department, and it will remain a continuing controversy. The Department has sponsored legislation (see 1973 House Doc. No. 205) which would confer such authority on the Department. All parties have fully briefed the issue. In our view, all concerned are entitled at this time to our ruling on the issue whether the Department presently has such power.

The decision of the Department was issued on June 12, 1973, following lengthy Statewide hearings initiated by the Department on its own motion to investigate whether "the regulations, practices, equipment, appliances or service" of the Company were "unjust, unreasonable, unsafe, improper or inadequate." See G. L. c. 159, § 16. Pursuant to its remedial powers under § 16, the Department had drafted a "Proposed Service Order" to the Company. The order was based on information, analysis and recommendations contained in a consultant's report.[2]

---

[2] Effective January 1, 1972, the Department had authorized Arthur D. Little, Inc. (ADL), to conduct an in-depth analysis of the Company's service operations. After an eight-month investigation during which ADL had complete access to the Company's personnel, facilities, and records in Massachusetts, ADL issued the results of its study in a report entitled Technical Analysis of the Massachusetts Area of New England Telephone and Telegraph Company (the ADL report).

The proceeding before the Department commenced by the drafting of an order to the Company directing it to appear and show cause why the Department should not formally adopt the Proposed Service Order. The order to show cause, dated September 25, 1972, announced that public hearings would be held in seven locations throughout the State from November 1, 1972, through January 10, 1973. Prompted by certain findings in the ADL report relative to the deterioration of service in Newton, on October 8, 1972, the mayor of Newton wrote to the chairman of the Department in complaint of the service deficiencies affecting the city and requested that his city be added to the list of municipalities initially selected as public hearing sites.

In his letter the mayor further requested that the issues to be considered include, inter alia, whether there should be a reduction in the telephone rates whenever the level of service offered to the subscribers in the city of Newton was substandard. The chairman of the Department granted the request, stating in a reply letter that "[p]ursuant to Section 24 of Chapter 159[3] of the General Laws, the Department will conduct the hearing which you have requsted in the near future." Thereafter, on October 24, 1972, the Department issued a second order in which the Company was notified that additional public hearings would be held in Newton relative to the adoption of the Proposed Service Order. The October 24 order was substantively identical to that of September 25. Both announced that the proceedings were to be held pursuant

---

[3] This section provides in pertinent part: "Upon written complaint, relative to the service or charges for service in, to or from any city or town as rendered or made by any company engaged therein in the transmission of intelligence by electricity, by the mayor or selectmen, or by twenty customers of the company, the department shall grant a public hearing, first giving to the complainants and the company reasonable written notice of the time and place thereof."

to the authority vested in the Department by virtue of
G. L. c. 159, § 16.[4]

The public was given due notice of the hearings.
Approximately fifteen public officials and eighty-five
members of the public testified at the hearings, which
consumed fifteen days and generated 2,244 pages of testi-
mony.

Following completion of the hearings scheduled in all
the proposed locations including Newton, the Department
issued its opinion in which it held that in view of the
substantial improvements to the service deficiencies de-
scribed in the ADL report, including improvements to
telephone facilities in Newton, the service measures set
out in the Proposed Service Order were not necessary.
However, the final decision did direct the Company to
comply with an extensive monitoring process by which
the Company was to report to the Department informa-
tion as to various service levels on a continuing basis;
relative to this end, the Department ordered that the
proceedings below were to remain open pending any
further order during the continuing surveillance.

With respect to Newton's request that a rate rebate
system to compensate for deficient service be implement-
ed, the Department stated in its decision that it was of
the opinion that it lacked statutory authority to order
rebates; denied the city's motion that the Proposed

---

[4] It is to be noted that § 24 is in essence a procedural statute
providing a method by which persons aggrieved by the service or
charges for service of a company involved in the transmission of
intelligence by electricity may have an opportunity to be heard on
complaint.    Section 16, on the other hand, relates generally to
hearings on service and may be commenced by the Department on its
own motion or on complaint.  A § 14 hearing relates to regulation of
rates and may also be commenced by motion of the Department or
on complaint.   Thus a city, under § 24, may request a hearing by
complaint that will encompass the matters set out in § 14 or in § 16
or both.   In this case the letter from the Department to the mayor of
Newton cited § 24 as the relevant provision, while the order to show
cause issued to the Company cited only § 16 as the relevant section.

Service Order be adopted as amended to include an "index system plan";[5] and denied the city's requested ruling that as matter of law the Department has the power under c. 159 to implement the index system plan as a remedy for inadequate service. The city of Newton and its mayor base their appeal, inter alia, on the denial of the motions and request for rulings.

Following the decree of the single justice granting it leave to intervene, the Company in due course filed a plea in bar and an answer. The plea in bar in substance alleged that the Company had not been notified that rates would be an issue; that the question of rate rebates, under an index system plan, had been expressly excluded from the proceedings before the Department; and that therefore the Department's refusal to adopt the city's proposal for rate rebates was not an appealable question under G. L. c. 25, § 5. The single justice abstained from decision on the plea for the reason that the rate rebate issue would remain a continuing controversy between the city and the Department. The Department took no position on the Company's plea before the single justice but argues before this court that the plea in bar should be denied and urges that we decide the issue whether the Department has authority to order rate rebates for substandard service.

Thus, the respondent Department and the intervener Company offer differing and opposite legal theories as to

---

[5] Under the "index system plan" service performance is measured by determining a composite monthly score for all "entities," that is the 300 switching machines, which serve customers and are located throughout the State. The monthly score depends on the number of customer trouble reports as well as measurements of dial tone speed, overflows, equipment irregularities, and incoming matching loss. These measurements are monitored by the Company and recorded on indices. If an entity averages below a certain minimum score for any specified period, a predetermined rate rebate would be given to all customers within the entity's service area. A similar system has been implemented in New York. See *Re New York Tel. Co.* 92 P. U. R. 3d 321, 354-359 (New York Pub. Serv. Commn. 1972).

how this case should be decided. Moreover, in addition to the grounds set forth in its plea in bar, the Company argues before this court that the city and its mayor lack standing to bring this appeal. The Department apparently takes the position that the city has standing and, in any event, urges that we resolve the legal issues.

Taking into account the arguments presented by the intervener, as we feel is proper in this case since the order is in fact directed to the Company,[6] the issues raised by this appeal are (1) whether the city of Newton and its mayor have standing as aggrieved parties under G. L. c. 25, § 5; (2) whether the question of rate rebates was or should have been considered and decided by the Department in the proceeding held below and is therefore an appealable question before this court and, if we should decide the above two questions in the affirmative; (3) whether the Department is vested with authority to order rate rebates and implement a basic index system to effect this remedy for past inadequate telephone service.

We conclude that the city does have standing to bring this appeal and that review as to the Department's authority to implement a rate rebate system is properly before this court.

We have had occasion quite recently to state the general principles for standing under G. L. c. 25, § 5, and to examine the relationship between the State Administrative Procedure Act, G. L. c. 30A, and appeal

---

[6] The city suggests that the intervener Company may raise only those matters which might be raised by the Department. We decline to apply the narrow rule that the claims of an intervener must be in subordination to those raised in the main proceeding; rather, we are of the view that the intervener's claim or defense is to be heard on the merits, at least in the circumstances of this case. As a general rule under prior equity practice the rule of subordination applied and the original parties retained dominion over the suit and could properly limit issues both raised in the original pleadings and on appeal. But exceptions to this general rule were well recognized (see e.g. *Hallett* v. *Moore,* 282 Mass. 380, 389 [1933]) and this case

under § 5, and we shall not repeat here what is stated at some length in *Save the Bay, Inc.* v. *Department of Pub. Util.* 366 Mass. 667 (1975). However, we are required to apply those general principles to this case to determine whether Newton was a party before the Department and is aggrieved by a ruling of that agency. In so doing, we conclude that Newton did have a statutory right to participate in the proceedings, did so appear in accordance with G. L. c. 30A, § 1 (3) (b), and therefore, in this respect, had standing to bring this appeal.

We note that G. L. c. 159, § 24, provides that on written complaint relative to the service or charges for service, made by the mayor of a city or the board of selectmen of a town, or by twenty customers, the Department "*shall* grant a public hearing" relative to this complaint (emphasis added). See n. 3, *supra*. It is of course true, as the Company suggests, that the statutory right to a § 24 hearing does not confer on the city an absolute right to have such a public hearing held as a part of a much broader proceeding already commenced under § 16. However, in this case the Department apparently made a policy decision to "consolidate" the hearing requested by the city under § 24 with the ongoing § 16 service proceeding that it had previously scheduled. The decision to hold the hearing demanded by Newton as part of the § 16 proceeding seems quite reasonable given the fact that the mayor's letter was primarily directed to service deficiencies uncovered and noted in the ADL report. However, once the Department chose to consolidate the hearings, Newton clearly was entitled as a statutory matter to participate fully in the proceedings and therefore satisfied standing re-

clearly falls within one such exception. For the practice under the Federal Rules of Civil Procedure, Rule 24, see generally Moore's Federal Practice, §§ 24.16; 24.17 (1974). See also *Cambridge Elec. Light Co.* v. *Department of Pub. Util.* 363 Mass. 474, 504 (1973).

quirements under G. L. c. 25, § 5. See G. L. c. 30A, § 1 (3) (b).[7]

The Company further argues that, even if Newton were a party to the proceedings, it was not "aggrieved" by any ruling of the Department because the final decision found that service in Newton was adequate and as a result Newton was neither adversely affected nor aggrieved by the decision not to implement the basic service index. However, we are not convinced by this argument because at the time it petitioned for a § 24 hearing, the city was clearly suffering from substandard service.[8] So viewed, the city's claim is that a rate or service system is per se unreasonable under § 24 if it fails to provide a method of adequate restitution for deficiencies in service. In light of past experience this claim is not speculative and Newton is clearly aggrieved by the Department's final decision.

Having concluded that Newton has standing, we next consider whether the issue of rate rebates is in any sense before us on the merits for purposes of appeal under G. L. c. 25, § 5, for it is clear that the Department summarily excluded from the hearings before it all evidence that Newton sought to introduce on the

---

[7] There is no question that Newton made an appearance and participated actively in the proceedings by introducing evidence, cross-examining witnesses, and calling its own witnesses.

[8] The ADL report indicated that Newton had very low service indices. However, the Department in its final order observed that the Company had taken emergency measures to improve the service, which were apparently successful. The final decision stated that "Newton no longer . . . [has] *capacity or dial tone* problems" (emphasis in original). During the hearings the city attempted to rebut the claim of improved service both by offering in evidence ninety-five affidavits setting forth service complaints and by offering expert testimony of a witness from ADL who testified in behalf of the city. We are, of course, bound by the Department's finding (to which, indeed, no challenge is made) that service in Newton had attained acceptable levels at the time of the final decision, since that finding rests on substantial evidence. G. L. c. 30A, § 14 (7).

proposed basic index system. In addition, the Department denied the city's motion that the Proposed Service Order be amended to include a rate rebate structure and denied the city its requested ruling which stated that the Department as matter of law had authority to order rate rebates.

Although the Department's action and rulings are ambiguous,[9] we believe that the rulings can be interpreted to mean the Department held that it was without statutory authority to order a rate rebate in any proceeding, be it rate or service.

The Company's position is that the rulings should not be so read but should be limited to their narrowest sense, that is as an exercise of the Department's discretion with respect to limiting its docket and facilitating its proceedings. Ordinarily the Department could properly so limit its inquiry and absent an abuse of discretion or a refusal to rule on a matter "properly arising in the course of any proceeding before the commission" (G. L. c. 25, § 5) we would not disturb this judgment. However, in this case the Department's rulings in effect cut off Newton's statutory right (G. L. c. 159, § 24) to be heard on the matter of a rate complaint. We note the peculiar posture of these proceedings in that the mayor of Newton by written complaint specifically requested that the matter of rate rebates be considered in the hearing. The Department affirmatively chose to consolidate the requested hearing with the ongoing G. L. c. 159, § 16, service proceeding.

---

[9] The decision of the Department denied the motions in a section entitled "Procedural Matters" and made no reference to the substantive merits of whether it had authority to implement the requested rebate system. In that sense it may have considered the matter not properly before it. However, at another point in its decision the Department refers to the city's request and expresses disagreement with the city's assertion that it could lawfully implement the system, noting however that it is "hopeful" that legislation will be forthcoming.

The Company suggests that the city could have submitted the question either in a then pending rate case or in a subsequently requested § 24 proceeding. From the decision in the rate proceeding, *Re New England Tel. & Tel. Co.* 100 P. U. R. 3d 189 (1973), it does not appear that the rebate system was considered, and it seems unduly burdensome to require the city to institute completely new § 24 proceedings, after it had specifically presented the question in the instant action. For these reasons, we hold that the matter of rate rebates was properly before the Department;[10] that the departmental rulings thereon have substantive content; and that, therefore, the substantive question whether the Department has authority to order rebates is before us on this appeal.

---

[10] The Company submits that while the Department by a § 16 proceeding may order that service, practices, and equipment be improved or modified and regulations given effect, the Department may not order any sort of rate relief as that remedy is provided exclusively by other sections, e.g., §§ 14 and 17. Therefore, the Company asserts, the matter of rate rebates is as matter of law beyond the scope of a § 16 proceeding.

There is no impenetrable wall separating issues that are material to rate proceedings from those material to service proceedings. As the Company concedes, inferior service may within permissible limits influence the Department to keep the rate of return allowed in a rate proceeding at the lower level of the scale of reasonableness (see *New England Tel. & Tel. Co.* v. *Department of Pub. Util.* 360 Mass. 443, 477 [1971]. Cf. *D. C. Transit Sys. Inc.* v. *Washington Metropolitan Area Transit Commn.* 466 F. 2d 394 [D. C. Cir. 1972], cert. den. 409 U. S. 1086 [1972]). Conversely, in considering service deficiencies and remedial orders the Department shall consider "the financial ability of the carrier to comply with the requirements of the order, and the effect of the carrier's compliance therewith, upon its financial ability to make such other changes." Moreover, the rate rebate system at issue here is sui generis, encompassing as it does service deficiencies and rate reductions as a consequence thereof. We are further influenced by the fact that the Department, the entity perhaps best suited to determine this issue, has apparently concluded that a consideration of rate rebates, should the Department be given legislative authority, is best accomplished in a § 16 proceeding and did file legislation to amend § 16 to give it such statutory authority. (See 1973 House Doc. No. 205.)

The Company further submits by plea in bar and by argument that since the order to show cause issued to it stated only that proceedings were pursuant to G. L. c. 159, § 16, and that since, as the Department ruled, it was not given notice that rates would be an issue in the proceeding, the question of rate rebates cannot be heard in these proceedings. See G. L. c. 30A, §§ 10, 11. However, should the circumstances have required, we could have remanded the case to the Department for appropriate action conformable with G. L. c. 30A.[11] See, e.g., the order of this court in *New England Tel. & Tel. Co.* v. *Massachusetts Dept. of Pub. Util.* 85 P. U. R. 3d 526, 528 (1970). However, our decision on the matter of the Department's authority makes this procedure unnecessary.

In view of our conclusions stated above, we turn to the question presented for appeal, namely, whether the Department is presently vested with authority to implement a rate rebate system as a remedy for inadequate telephone service. We hold that the Department has no such authority.

The city contends that by its decision in *Wilkinson* v. *New England Tel. & Tel. Co.* 327 Mass. 132 (1951), this court has already ruled that the Department is empowered to provide a remedy for inferior service which requires the company to rebate money to customers. This claim is without merit; the *Wilkinson* case is completely inapposite to the issues presented here. That case was an action at law by the proprietress of a hair dressing establishment for monetary damages allegedly caused by the telephone company's providing faulty service. The decision did not concern any implied authority in the Department to implement a broad rebate system. Rather the holding of that case was that the company possessed the right to limit its liability at

---

[11] Resolution of this aspect of the appeal requires that we dismiss the plea in bar.

common law for rendering inadequate service by enacting regulations which became an integral part of the contractual relationship between the company and its subscribers.  327 Mass. at 135-136.  See also *Ellis* v. *American Tel. Co.* 13 Allen 226 (1866).

Further, we hold that the statutory grant of authority to the Department to regulate and supervise the Company's activities does not imply the power to impose a broad system of rate rebates for inadequate service.[12] In *Metropolitan Dist. Commn.* v. *Department of Pub. Util.* 352 Mass. 18 (1967), wherein the claim raised was that the Department should award monetary damages for alleged overcharges by an electric utility, we held, "The department was correct in ruling that it had no power to award reparations.  Such power must be expressly conferred by statute, as it was in the case of carriers (G. L. c. 159, § 14)."  *Id.* at 26.  And we quoted with approval the Department's decision below to the effect that "[w]e think it clear that the explicit reference to this power in this chapter of the General Laws and its absence in another is an intentional limitation of the Department's power."  *Id.* at 23.  We draw support for this position from the fact that where the General Court has desired that the Department have the power to order any form of rebates it has expressed that intent by

---

[12] In this regard this case is distinguishable from *Cambridge Elec. Light Co.* v. *Department of Pub. Util.* 363 Mass. 474 (1973), wherein we sustained the issuance of Department regulations relating to billing procedures and processes required before the shut-off of service.  In that case the regulations were issued under G. L. c. 164, § 76C, inserted by St. 1969, c. 645, a general rule making authority providing:  "The department may establish from time to time such reasonable rules and regulations consistent with this chapter as may be necessary to carry out the administration thereof."  Conversely, G. L. c. 159 has specific sections relating to the regulation of rates and service, see, e.g., §§ 14, 16, and 19.  Moreover, the regulations in the *Cambridge Electric* case were in no way concerned with rate rebates.  Indeed, St. 1974, c. 625, added § 94G to G. L. c. 164, in order that rebates may be ordered for excessive charges under the so called fuel adjustment clause.  See discussion above.

statutory enactment.[13]   See G. L. c. 159, § 14 (the
Department may order "due reparation" for a discrimin-
atory rate collected by a railroad corporation); see also
St. 1974, c. 625, adding G. L. c. 164, § 94G, to provide
in pertinent part that "[t]he department shall require
electric companies to file monthly reports of fuel costs . . ..
The department shall examine such reports from time to
time and shall order rebates to *customers* if the total fuel
charges billed to customers exceeds the amount required
by companies to pay increases in the cost of fuel and
purchased power" (emphasis added).[14]

Finally, the city of Newton argues that unless the
Department has the authority to implement the rebate
system an unconstitutional taking of property without
due process of law would result.   The theory underlying
this claim is not readily apparent.   At oral argument
reference was made to *Pinnick* v. *Cleary,* 360 Mass. 1
(1971).   The analogy is hazy at best.   The *Pinnick* case
concerned a comprehensive legislative enactment whereby
a no-fault system of insurance was instituted abrogating
the common law right to sue in specific and narrow
circumstances.   Chapter 159, regulating common car-
riers, is not in abrogation of common law rights and, as

---

[13] We note that the Department has sponsored and continues to
sponsor legislation empowering it to grant rebates for deficient service
(see, e.g., 1973 House Doc. No. 205) and this would seem to be a
felicitous process for it to continue to pursue.

[14] Cases from other jurisdictions supportive of this result include:
*Michigan Bell Tel. Co.* v. *Public Serv. Commn.* 315 Mich. 533
(1946) (where the court expressly rejected the argument that such
power may be implied from the commission's broad regulatory
powers); *Straube* v. *Bowling Green Gas Co.* 360 Mo. 132 (1950);
*Southern Bell Tel. & Tel. Co.* v. *Mobile Am. Corp. Inc.* 291 So. 2d
199 (Fla. 1974); *Florida Tel. Corp.* v. *Carter,* 70 So. 2d 508 (Fla.
1954); *Elyria Tel. Co.* v. *Public Util. Commn.* 158 Ohio St. 441
(1953).   Cf. *Interstate Commerce Commn.* v. *Cincinnati, New
Orleans & Texas Pac. Ry.* 167 U. S. 479, 505-506 (1897).   But see
*D. C. Transit Sys. Inc.* v. *Washington Metropolitan Area Transit
Commn.* 466 F. 2d 394 (D. C. Cir. 1972), cert. den. 409 U. S. 1086
(1972).   Cf. Note, 62 Col. L. Rev. 312 (1962).

we noted in *Wilkinson* v. *New England Tel. & Tel. Co.* 327 Mass. 132, 136 (1951), the limitation on the right to recover for inadequate service arising from failure of service continuing twenty-four hours is contractual in nature, and "indissolubly bound" to rates. The city does not challenge the reasonableness of this limitation. In sum, as presented, we see no merit in the constitutional arguments.

Judgment is to be entered dismissing the plea in bar of the intervener Company and affirming the decision and order of the Department in so far as they denied the city's motions and certain requested rulings of law.

*So ordered.*