SOUTHBRIDGE WATER SUPPLY COMPANY *vs.* DEPARTMENT
OF PUBLIC UTILITIES.

Suffolk.   March 7, 1975. — July 3, 1975.

Present: TAURO, C.J., QUIRICO, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Public Utilities,* Rate base.   *Water Supply Company,* Rate base.
*Equity Pleading and Practice,* Review of order of department of
public utilities.

With respect to rates filed by a water supply company and disallowed
by the Department of Public Utilities in 1970 on the ground the
company had incorrectly determined the "rate-base" for the plant
in service for the test year 1968 by the "year-end, as opposed to a
year-average, method," it was held on an appeal under G. L.
c. 25, § 5, that the department's decision constituted an error of
law under c. 30A, § 14 (8), by reason of unusual circumstances,
principally that since the last rate increase in 1965 the company had

---

undertaken extensive but necessary capital improvements, including acquisition and construction of a reservoir which increased the value of its plant over 60% and was completed and taken in the company's books in December, 1968, that the company had not experienced an increase in revenues or a decrease in expenses to correspond with plant additions, that it suffered from regulatory lag and attrition, and that use of the year-average method reduced its annual return by a significant sum sharply below the return contemplated by the department; the department must modify its decision by permitting a year-end rate base. [305-309]

An order of the Department of Public Utilities, entered without notice or hearing of any kind, that a water supply company refund to customers the difference between old rates and new increased rates was set aside on an appeal under G. L. c. 25, § 5. [309-310]

PETITION filed in the Supreme Judicial Court for the county of Suffolk on January 20, 1972.

The case was reserved and reported by *Quirico,* J.

*Mark A. Michelson* (*Thomas F. Maffei* with him) for the Southbridge Water Supply Company.

*Mitchell J. Sikora, Jr.,* Assistant Attorney General, for the Department of Public Utilities.

HENNESSEY, J. This is an appeal by Southbridge Water Supply Company (the company) pursuant to G. L. c. 25, § 5, from an order of the Department of Public Utilities (the department) which (a) denied the company's motion to modify a decision of the department as to the "rate base" to be used in determining the company's water rates and corresponding rate of return on capital and (b) ordered the company to pay certain refunds to its customers, for overcharges allegedly resulting from a delay in the customary billing dates to customers.

On October 16, 1969, the company filed a proposed schedule of rates and charges with the department, to be effective on November 1, 1969. The department suspended the effectiveness of the proposed schedule and on August 18, 1970, held a hearing thereon at the Southbridge town hall.

On September 9, 1970, the department issued a decision in which it disallowed the company's proposed rates

because it found that the company had incorrectly calculated its rate base, principally by using the year-end rather than the year-average test rate base for plant in service. This appeal raises no question as to any other item in the rate-base calculation or as to the rate of return allowed by the department. The department ordered the company to file a new schedule of rates and charges calculated to produce lower revenues, predicated on the change to a year-average rate base. On September 22, 1970, the company filed a motion for modification addressed solely to this aspect of the department's decision and order. On October 5, 1971, the department heard argument, but no evidence, on the company's motion for modification and a motion by the town of Southbridge (the town) to reopen the rate proceedings. On December 23, 1971, the department denied both motions. The company filed an appeal from that decision.

In the meantime, the company had complied with the department's original decision by filing, also on September 22, 1970, a "new schedule of rates and charges . . . to be effective not less than twenty-one (21) days after . . . filing." This revised schedule, M. D. P. U. No. 15, stated that it was "Effective: On all bills rendered on or after October 13, 1970." Neither within the twenty-one days after filing nor at any time was any motion made or any other formal action taken by anyone to question any aspect of these new rates. Nevertheless, in its decision of December 23, 1971, on the motions to modify and to reopen, the department, without prior notice or hearing of any kind, ordered the company to make certain refunds based on the increase in rates.

The facts may be stated as follows: The company is a Massachusetts corporation duly authorized to supply water to the inhabitants of the towns of Southbridge, Sturbridge and Charlton. The company's last rate increase was granted in 1965, at which time the new rates were calculated to produce a 6% rate of return on a rate

base of $1,247,902. By the time the company filed the present request for a rate increase in 1969, its rate of return had deteriorated while its over-all investment in plant and equipment had more than doubled. In 1968, for example, the company's rate of return had eroded to 3.81 % on a rate base of $2,442,709. Even using the rate base later calculated by the department for 1968, namely, $2,061,267, the company's rate of return was only 4.51 %. In 1969, the year in which the proposed new schedule of rates and charges was filed, the company was operating at a net cash loss which by the end of the year amounted to $3,649.68. In 1970, the company's net cash loss for the first six months had increased to $12,917. There was evidence that the company's financial position, prior to its filing the request for a rate increase, seriously affected its day to day operations.

While the new rates approved by the department were in theory calculated to produce a net operating income of $187,163, equalling a 9.08 % rate of return on a rate base of $2,061,267, the experience since the effective date of the new rates, October 13, 1970, indicates that the net operating income and rate of return theoretically permitted by the department have never been realized. In fact, during the first two full years of operation under the new rates, the company's rate of return, even on the 1968 average rate base, had already substantially fallen short of what was projected by the department. For example, in 1971, the first full year, the actual rate of return on the department's rate base was 8.07 %. In 1972 the rate of return had declined to 7.43 %. The respective net operating income figures were $166,422 and $153,233. Continuing increases in the company's real estate taxes and depreciation were among the principal causes for this declining return.

Since the company's last rate increase in 1965, it had been engaged in an extensive but necessary program of capital improvements. By far the largest increase in the company's investment took place with the acquisition and

development of a reservoir (with related structures and equipment) known as the Cohasse Brook reservoir, which was completed and taken in the company's books in December, 1968, at a total cost of $1,089,955. The addition of this reservoir increased the company's net plant in service and its water storage capacity by more than 60%. This increase should be adequate to meet the needs of the town of Southbridge for many years.

This great increase in the company's net plant in service automatically resulted in a substantial increase in the company's operating expenses, taxes and depreciation. In addition, the financing of the new reservoir at 6.92% approved by the department in 1968, increased the company's over-all cost of debt by more than 21%, from 5.09% to 6.17%. It increased the company's debt-equity ratio from 42% to 58%.

Although the company had so greatly increased its actual net plant in service in 1968, the department nevertheless rejected the company's 1968 "year-end, as opposed to a year-average, method of determining the rate base for the test year." In its initial opinion the department gave no reason for this decision. In its denial of the company's motion for modification, the department stated only that it had used "conventional methods that have been generally recognized and accepted as proper procedures. We see no grounds for modifying our original decision."

Since, in accordance with the department's rules, the Cohasse Brook reservoir, completed in 1968 after several years' work, was taken into the rate base only as of December 31, 1968, the use of year-average rather than year-end figures for the rate base had the effect of excluding one-half the value of the Cohasse Brook reservoir from the rate base for 1968 and until the company's next rate application. According to the department's figures, this reduced the company's rate base from $2,608,552 to $2,061,267 (a reduction of $547,285 or 21%). At the 9.08% return allowed by the de-

partment, as to which no question has been raised, the effect of the use of the year-average rather than year-end rate base was to reduce the company's annual return by $49,693.

1. We consider first the company's contention that the department's refusal to apply the year-end rate base is illegal, as confiscatory on the one hand, and on the other hand, as an arbitrary and capricious order not based on substantial evidence and therefore error of law within the meaning of G. L. c. 30A, § 14 (8).[1]   The company does not, of course, claim that it should be allowed to recapture the charges it has lost, by reason of the illegal rates, between 1968 and 1974.   Rather, it seeks a remand of the matter to the department on terms which require expeditious relief as to future rates.

We assume, without deciding, and as the department contends, that it has not been shown that the contested rate base results in confiscation.   Nevertheless, we conclude that in the unusual circumstances of this case, the department's decision and rulings as to the rate base constitute error of law.

The unusual circumstances as shown in an uncontroverted record are, in major part, that the company completed and took into its books in December, 1968, the Cohasse Brook reservoir; that this addition was constructed with the approval of the department, and for the purpose of providing for anticipated future increased demands; that the new reservoir increased the value of

---

[1] General Laws c. 30A, § 14 (8), inserted by St. 1954, c. 681, § 1, reads as follows: "The court may affirm the decision of the agency, or remand the matter for further proceedings before the agency; or the court may set aside or modify the decision, or compel any action unlawfully withheld or unreasonably delayed, if it determines that the substantial rights of any party may have been prejudiced because the agency decision is — (a) In violation of constitutional provisions; or (b) In excess of the statutory authority or jurisdiction of the agency; or (c) Based upon an error of law; or (d) Made upon unlawful procedure; or (e) Unsupported by substantial evidence; or (f) Unwarranted by facts found by the court on the record as

the company's plant by more than 60%;[2] at the 9.08% return allowed by the department, as to which no challenge has been made, the effect of the use of the year-average rather than year-end rate base was to reduce the company's annual return by a significant sum,[3] that the company has suffered and will continue to suffer from the deleterious effects of regulatory lag and attrition;[4] and that although the company has made substantial and unusual additions to plant, it has not experienced a corresponding increase in revenues or decrease in expenses.

---

submitted or as amplified under paragraph (7) of this section, in those instances where the court is constitutionally required to make independent findings of fact; or (g) Arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law.

"The court shall make the foregoing determinations upon consideration of the entire record or such portions of the record as may be cited by the parties. The court shall give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it."

[2] The cost of the new reservoir was $1,089,955, which increased the year-end total value of plant to $2,608,552. The department, however, by averaging the rate base between beginning and end of the year, permitted a rate base of only $2,061,267, a reduction of $547,285 or 21%.

[3] The reduction in the company's annual return is shown as $49,693, at the 9.08% rate of return. This is a significant sum as compared to the size of the operation. The order means a 7.2% reduction of the company's net operating income in each year until it is reversed or a new rate allowed.

[4] We have in other cases emphasized the importance of this factor, as follows: "The term 'attrition' refers to 'the tendency of the rate of return to diminish in a period of comparatively high construction costs' when new and 'relatively expensive' plant is being added. 'As the high cost plant comes into service, it tends to increase the applicable rate base at a more rapid pace than the resultant earnings; and the [actual] rate of return . . . decreases accordingly.' . . . [Cases cited.] The problem is particularly acute in an inflationary period." *Boston Gas Co.* v. *Department of Pub. Util.* 359 Mass. 292, 307, n. 19 (1971).

It is appropriate for us to weigh these circumstances in light of the fact that the company would have been entitled by the very terms of the decision to a new rate structure producing on all its property the full return allowed by the department if the company had filed a new rate application at any time after September 9, 1970, using any test year beginning with 1969. Such new rates would long since have been in effect. The company chose not to follow that course and, by reason of the elapsed time in obtaining decisions on, first, its motion for modification, and then this appeal, the company has been deprived, without opportunity to recapture, of all return on a substantial part of its investments for all the years between and including 1968 and 1974.[5] Common sense supports our conclusion that, in the unusual circumstances here shown, further substantial delay should not be occasioned by requiring the company to file a new rate schedule now.

Our conclusions here are consistent with our holdings in prior cases. "The test year approach to rate making is a practice which has long been followed by the Department and by comparable authorities in other jurisdictions. . . . [T]he Department has consistently used the average plant investment in computing the test year rate base." *New England Tel. & Tel. Co.* v. *Department of Pub. Util.* 360 Mass. 443, 452 (1971), and cases collected therein. Nevertheless, we have recognized that, where there are substantial additions to plant during the test year, and particularly where these additions are non-recurring, some authorities permit the use of the year-end

---

[5] The course of the department's proceedings such as this is rarely expeditious. Nevertheless, we agree with the department's statement in its brief that the company in this case must bear part of the responsibility for the time lag: "Having elected to pursue its appellate remedy instead, it must assume some responsibility for the consequent rates of return." "Very simply, the Company has always had available the alternate remedy of a new rate application to accommodate these factors."

figures in order to reflect accurately the extent of the company's investment. *Id.* at 452-453.

Our other conclusions in the *New England Tel. & Tel. Co.* case are not to the contrary even though in that case we held that the department was not required to use the year-end figures: "[T]his court will not set aside the Department's decision and orders in this case simply because it used an average rate base for the test year rather than the year-end base unless that particular practice resulted in rates which are confiscatory. See *St. Joseph Stock Yards Co.* v. *United States,* 298 U. S. 38, 53 [1936]." *Id.* at 453. Clearly the meaning of our language, read in context, while strongly supportive of the proposition that we will not lightly find error of law in the department's rulings on this issue is not a statement of an absolutely unchangeable principle. In this regard we were not establishing a general rule permitting the department to make errors as long as they were just short of confiscation. On the contrary, we held then (see 360 Mass. at 449 [1971]) and we reaffirm now, that we shall review the department's decisions not only for confiscation but for the errors enumerated in G. L. c. 30A, § 14 (8). Cf. *Boston Gas Co.* v. *Department of Pub. Util.* 367 Mass. 92 (1975).

The department argues, and we think correctly, that the use of a year-end rate base is not the exclusive antidote for the effect of attrition. The department may also offset that factor by means of a higher allowable rate of return, though on the year-average rate base rather than the year-end rate base. The department points out that 9.08% was allowed here rather than the requested 8.25%. Nevertheless, error of law has been shown here because, among other facts, it has been shown that the use of the year-average rate base resulted in a return to the company which is sharply below the return which the department contemplated. Thus, a compelling case has been made out by the company that the failure to apply

the year-end rate base here, even with the allowance of a 9.08% rate of return, resulted in an inadequate return.[6]

2. In its order of December 23, 1971, denying the company's motion for modification, the department stated that a "question was raised as to the Company's billing subsequent to the hearing and the Department's order dated September 9, 1970 allowing the rate increase." It found that the company had improperly postponed its customary billing dates until after the rate increase had become effective on October 13, 1970, and ordered a refund of the differential for the months of August, September, and October, 1970.

The company attacks the refund order on the grounds (1) that it was denied an opportunity to be heard, (2) that the order is not supported by substantial evidence, (3) that the department lacks authority to order a refund, and (4) that the order deprives it of property without due process of law.

It is clear that the refund order must be set aside. The department concedes that the company was not afforded an opportunity to be heard, and further that no evidence was heard as to the issue. Even assuming that the department had authority to order a refund,[7] the company was entitled to notice and a fair hearing. See G. L. c. 30A, § 10; *Reale* v. *Superior Court,* 265 Mass. 135, 141 (1928); *Becker Transp. Co. Inc.* v. *Department of Pub. Util.* 314 Mass. 522, 526 (1943); *Strange* v. *Powers,* 358 Mass. 126, 135 (1970).

---

[6] The brief of the company summarizes, in part, as follows: "For 1971, the first full year of the rate increase, the return on the 1968 average rate base was 8.07% (88.9% of 9.08%) and on the year-end rate base the return was 6.37% (70.2% of 9.08%). Since 1971 attrition has continued to reduce the return. The results for 1972 are 7.43% (81.8% of 9.08%) on the 1968 average rate base and 5.87% (64.6% of 9.08%) on the year-end rate base. The 1973 return was lower still."

[7] The company phrases it as follows: "[The department] had . . . [no] authority to order a refund of monies collected more than a year earlier under approved final rates."

The department also concedes that it lacks authority to order a utility to make reparation of a collected overcharge to customers. See *Metropolitan Dist. Commn.* v. *Department of Pub. Util.* 352 Mass. 18, 23 (1967); *Newton* v. *Department of Pub. Util.* 367 Mass. 667, 678, 681 (1975). Nevertheless, it is clear that the department has adequate authority to inquire into whether the charges by the company have conformed to the schedules filed with the department. See the *Metropolitan Dist. Commn.* case, *supra,* at 26-27. It is also clear that overcharged customers, if there are any, may recover directly from the company by an appropriate action, since the controlling statute of limitations apparently has not yet run. Cf. G. L. c. 93A.

We conclude that we shall leave it in the department's discretion, whether it will make further inquiry into the billing practices of the company in 1970. Any new proceeding must, of course, provide adequate notice and opportunity to be heard.

3. The case is remanded to the county court. An order is to be entered there (a) setting aside the department's "refund" order concerning 1970 charges, (b) remanding the matter to the department with instructions to modify its decision by permitting a year-end rate base rather than a year-average rate base for purposes of calculating the rate of return, and (c) directing a further report by the department to the county court. All proceedings should be expeditiously accomplished in view of the lengthy delays already encountered.

*So ordered.*