371 Mass. 881                                                881

Fitchburg Gas & Electric Light Co. v. Department of Public Utilities.

FITCHBURG GAS AND ELECTRIC LIGHT COMPANY vs.
DEPARTMENT OF PUBLIC UTILITIES.

Suffolk.    October 6, 1976. — February 14, 1977.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, & WILKINS, JJ.

*Public Utilities*, Rate base.  *Practice, Civil*, Review of order of depart-
ment of public utilities.  *Due Process of Law*, Public utilities.

An order of the Department of Public Utilities, which reflected its
  policy of excluding the unamortized cost of abandoned facilities
  from a utility's rate base, did not lack substantial evidentiary sup-
  port in violation of G. L. c. 30A, § 14 (7), even though the utility's
  original investment decision and retirement decision were prudently
  made. [884-887]
The decrease in a utility's rate of return resulting from an order of the
  Department of Public Utilities excluding the unamortized cost of
  abandoned facilities from the rate base did not render the order
  confiscatory or constitute special circumstances compelling a con-
  trary order under G. L. c. 30A, § 14 (7). [887-889]

PETITION filed in the Supreme Judicial Court for the
county of Suffolk on August 4, 1975.
  The case was reserved and reported by *Kaplan*, J.
  *Gerard A. Maher* of New York (*Richard L. Brickley &
James L. Winston*, with him) for the plaintiff.
  *Michael Eby*, Special Assistant Attorney General, for
the Department of Public Utilities.

HENNESSEY, C.J.  The Fitchburg Gas and Electric
Light Company (Fitchburg) filed with the Department of
Public Utilities (Department) new rate schedules de-
signed to increase its annual revenues by $2,300,000. The
Department issued a decision and order authorizing new
rate schedules designed to increase Fitchburg's annual
revenues by $2,096,000. That order excluded from Fitch-
burg's rate base $1,399,900, the unamortized value of cer-
tain facilities which Fitchburg retired prematurely in 1971

and 1972. After our opinion in *Boston Gas Co.* v. *Department of Pub. Utils.*, 367 Mass. 92 (1975), the Department held hearings on the subject of its exclusion of this property and issued a final order which affirmed the original order excluding the unamortized abandoned property from the rate base for purposes of establishing just and reasonable rates.[1] Fitchburg appeals from this final decision and order under G. L. c. 25, § 5.

The property involved in this dispute comprises certain coal handling facilities, boiler plant equipment, and turbogenerators, which Fitchburg acquired at various dates between 1915 and 1953. Fitchburg used these properties until 1971-1972, when new Massachusetts environmental pollution regulations rendered them obsolete. Finding the costs of compliance with the antipollution regulations excessive, Fitchburg decided to retire these properties and to purchase replacement capacity from the Boston Edison Company (Edison). The parties agree that this decision was a reasonable one. At the time of the unforeseen early retirement Fitchburg had not recovered the full cost of these properties through depreciation.

In 1972 Fitchburg requested Department permission to amortize over a period of ten years the undepreciated cost of the coal handling facilities, and to amortize over a period of 23.5 years the undepreciated cost of the boilers and turbogenerators. The Department granted those requests and agrees that one could not reasonably expect Fitchburg to have accelerated the depreciation rate on these properties so that their cost would have been amortized fully at the time of retirement. The Department argues that as a result of its decision, Fitchburg's customers (as part of their cost of service) are paying for plant facilities which provide no customer service, in order that Fitchburg can recover its entire original investment in these facilities. On the other hand, one can argue that such payments benefit

---

[1] The Department stayed its final order pending the release of the Boston Gas Company decision to see if it would shed light on Fitchburg's case. For a discussion of the impact of the opinion, see note 8 *infra.*

current customers to the extent that Fitchburg needs to attract additional capital to meet present needs.[2] Additionally, consumers are paying Fitchburg for the power Fitchburg currently buys from Edison and resells to them.

Fitchburg also requested that the Department include the unamortized cost of the abandoned property in Fitchburg's rate base, the basis on which its rate of return is computed. The Department denied this request in its final order, applying its general policy that the risk of unforeseen, premature retirement of facilities equitably should fall in part on Fitchburg's stockholders. This policy protects investors against loss of actual investment by requiring that consumers absorb the costs of useless property, but limits the burden on consumers by requiring that stockholders forgo a return on unused property.[3] Hence the Department decided to allow Fitchburg to recoup fully its original investment in the abandoned property while denying further return on this investment.[4] The Department opines that its policy is equitable and encourages efficient management and careful planning.

Fitchburg complains that the reduced rate base produces a 10.8% rate of return on equity capital and a 9.13% over-all rate of return. The Department authorized returns of 13% and 9.87%, respectively. Consequently, Fitchburg maintains, the Department's decision to exclude the un-

---

[2] Investors may·be reluctant to invest in an enterprise when past investors suffered extensive losses from unforeseeable risks.

[3] This policy is theoretically illogical in the sense that investors either risk loss of investment from premature retirement, in which case they are entitled to neither return on nor return of investment, or they continue to hold an existing investment on which they are entitled to a return. However, given the conflicting opinions on the proper policy for handling such unforeseeable risks and the potential losses involved, the Department's compromise policy makes practical sense. See J.C. Bonbright, Principles of Public Utility Rates 214 (1961).

[4] Presumably Fitchburg received an adequate return on its investment for approximately twenty to fifty years so the Department's decision decreases its total return on past investment but does not eliminate it entirely. A potential investor then can predict that in the event of an unforeseeable loss he will recover his investment and receive some return thereon but not so much return as would otherwise be his due.

amortized abandoned property from its rate base leads to effective rates of return which are confiscatory and, even if the rates are not actually confiscatory, constitutes error of law under G. L. c. 30A, § 14 (7). Confiscatory rates violate arts. 1, 10, and 12 of the Declaration of Rights of the Massachusetts Constitution, and the Fourteenth Amendment to the United States Constitution. In addition, Fitchburg claims that the Department's decision is unsupported by substantial evidence and, therefore, violates G. L. c. 30A, § 14 (7). We disagree. We conclude that the Department's decision was a reasonable exercise of its economic and regulatory judgment and that Fitchburg has failed to meet its burden of proof on the issues of confiscatory or erroneous effective rates of return.

1. The Department's power to regulate public utility rates is limited by a utility's constitutional right to a fair and reasonable return on investment. *Boston Gas Co.* v. *Department of Pub. Utils.*, 368 Mass. 780, 789-790 (1975). A return is fair and reasonable if it covers utility operating expenses, debt service, and dividends, if it compensates investors for the risks of investment, and if it is sufficient to attract capital and assure confidence in the enterprise's financial integrity.[5] *FPC* v. *Hope Natural Gas Co.*, 320

---

[5] "Return" in this sense describes utility revenue requirements including operating expenses and capital costs. The Department computes a utility's revenue requirements through valuation of the utility's rate base and establishment of a rate of return which is then applied to the rate base. Together these computations yield a return on investment. A utility's income can be increased either by increasing its rate base or by increasing its permissible rate of return. See J.C. Bonbright, Principles of Public Utility Rates 149-153 (1961); see generally, *id.* at 149-151. The United States Constitution does not require that the Department reach a fair and reasonable return by manipulation of either figure as long as the effective return is sufficient to cover revenue requirements as described in the text above. *FPC* v. *Hope Natural Gas Co.*, 320 U.S. 591, 602 (1944). Similarly, the Massachusetts Constitution does not require use of any specific economic theory or method of return computation, *New England Tel. & Tel. Co.* v. *Department of Pub. Utils.*, 360 Mass. 443, 453 (1971); *New England Tel. & Tel. Co.* v. *Department of Pub. Utils.*, 331 Mass. 604, 616 (1954), except to the extent that improper exclusion of an investment from valuation of a rate base denies a return on that investment. *Boston Gas Co.* v. *Department of Pub. Utils.*, 367 Mass. 92, 98 (1975). See the discussion in note 7 *infra.*

371 Mass. 881                                    885

Fitchburg Gas & Electric Light Co. *v.* Department of Public Utilities.

U.S. 591, 603 (1944), cited in *Mystic Valley Gas Co.* v. *Department of Pub. Utils.,* 359 Mass. 420, 424 (1971). When a utility claims that its rates are confiscatory, this court affords it independent review as to law and fact. *Boston Gas Co.* v. *Department of Pub. Utils.,* 368 Mass. 780, 790 (1975). *Mystic Valley Gas Co.* v. *Department of Pub. Utils., supra* at 424. In addition, the Department's rate setting powers are circumscribed by the standards enumerated in G. L. c. 30A, § 14 (7).

A utility which alleges confiscatory or otherwise unlawful rates has the burden of proof on its allegations, see *Wannacomet Water Co.* v. *Department of Pub. Utils.,* 346 Mass. 453, 463 (1963); *New England Tel. & Tel. Co.* v. *Department of Pub. Utils.,* 327 Mass. 81, 91 (1951). Thus, to obtain the relief Fitchburg requests,[6] it must establish clearly either that the Department's decision to exclude the unamortized cost of the abandoned plant from the Fitchburg rate base itself was confiscatory (see note 7 *infra*), or violative of G. L. c. 30A, § 14 (7), or that the decision resulted in a confiscatory or otherwise illegal effective return on investment. We will examine the legal arguments and the relevant facts as to these issues.

2. Fitchburg maintains that the Department's order, excluding the unamortized cost of abandoned facilities from Fitchburg's rate base, lacks substantial evidentiary support and therefore violates the provisions of G. L. c. 30A, § 14 (7).[7] In essence, it argues that, because no evidence con-

---

[6] Fitchburg requests that this court remand the decision to the Department with instructions to include in its computation of Fitchburg's rate base the unamortized cost of the prematurely abandoned property.

[7] Fitchburg implies, but has not argued, that improper exclusion of this item from the rate base is itself confiscatory. Were the exclusion to be improper, it could be confiscatory in a constitutional sense, see note 5 *supra,* but only if the exclusionary order is effectively unsupportable. See *Boston Gas Co.* v. *Department of Pub. Utils.,* 367 Mass. 92, 98 (1975). This standard of proof for unconstitutional exclusion from rate base calculations follows from the proposition that the Massachusetts Constitution does not require use of a particular method of rate base calculation, *New England Tel. & Tel. Co.* v. *Department of Pub. Utils.,* 331 Mass. 604, 616 (1954), and therefore "we will not lightly set aside supportable determinations made by the Department in this area." *Boston Gas Co., supra.*

tradicts the prudence of its investment in these facilities or of its decision to retire these facilities prematurely and because noted authorities on public utility regulation support the inclusion of such facilities in a utility's rate base, the Department must place the unforeseen loss on Fitchburg's consumers. The Department, conceding the prudence of Fitchburg's decisions, presents similar noted authorities which support its order as rooted in sound judgment. The parties agree that the order rests on a Department policy which has been applied consistently to Fitchburg in particular and to utility companies generally since 1954.

The permissibility of excluding such abandoned property from a utility company's rate base is a question which this court has faced and decided. *Boston Gas Co.* v. *Department of Pub. Utils.*, 367 Mass. 92 (1975). We found supporting authority in academic works and agency decisions for the conflicting arguments of the utility and the Department in that case.[8] *Id.* at 102 & n.4. Consequently, we found the Department free to select a rule of its choice on this subject as long as the rule was consistently applied, did not have a confiscatory *effect*, and as long as no special circumstances compelled application of a different rule.[9] *Id.* at 103-104.

We see no reason to alter our view that the Department may institute a policy that the unamortized cost of prematurely abandoned property should be excluded from rate

---

[8] The Boston Gas Company, like Fitchburg, argued that the prudence of both its original investment and its decision to retire facilities prematurely compelled the Department to include the unamortized cost of the facilities in its rate base. *Id.* at 98-99.

[9] For reasons peculiar to that case (that is, the unamortized abandoned property rule had been inconsistently applied to the Boston Gas Company) we overturned the Department's exclusionary order, *id.* at 94, and later rejected as inadequate the Department's reasons for its inconsistent orders on rate base exclusions of unamortized property abandoned by the Boston Gas Company. *Boston Gas Co.* v. *Department of Pub. Utils.*, 368 Mass. 780, 802 (1975). Because consistency of rule application is not at issue in the present case, the latter Boston Gas Company decision in no way affects the Department's order herein and the Department correctly so held.

371 Mass. 881                                   887

Fitchburg Gas & Electric Light Co. *v.* Department of Public Utilities.

base calculations, even though the utility's original invest-
ment decision and retirement decisions were prudently
made. Therefore, Fitchburg's allegation that the Depart-
ment's exclusionary order lacked substantial evidentiary
support must fail, and we turn to Fitchburg's contentions
that the order has a confiscatory or otherwise illegal effect
and that this effect constitutes "special circumstances"
which require the application of a different rule.

3. Fitchburg contends that, even if the Department's
rate base accounting rule which excludes prematurely
abandoned property is legal in general, the order applying
that rule in Fitchburg's case is illegal because it produces
rates which are confiscatory and which are so inadequate
that they constitute "special circumstances" compelling
a contrary order pursuant to G. L. c. 30A, § 14 (7),[10] as
applied in *Southbridge Water Supply Co.* v. *Department
of Pub. Utils.*, 368 Mass. 300 (1975). In describing the spe-
cial circumstances which render the Department's order
legally erroneous, Fitchburg focuses on the decreased re-
turn which the smaller rate base produces. It argues that
with its rate base diminished in size by the Department
its effective rates of return are below those authorized by
the Department and that this discrepancy renders the De-
partment's rate base order both confiscatory and violative
of G. L. c. 30A, § 14 (7). (Fitchburg does not contend that
the authorized rates of return per se are confiscatory or
otherwise illegal.)

In *Southbridge*, at 305, we found that the application of
a generally used and accepted rate base accounting rule to
the facts of that case resulted not in confiscation but in
legal error in violation of § 14 standards. The utility com-
pany in *Southbridge* showed error of law pursuant to § 14
by producing evidence that the contested order excluded
a major new and useful investment from its rate base so

---

[10] General Laws c. 30A, § 14 (7) (*e*), provides that this court may
remand, set aside, or modify a Department order which is not based
on substantial evidence and which prejudices substantial rights of a
party.

888                                          371 Mass. 881

Fitchburg Gas & Electric Light Co. *v.* Department of Public Utilities.

that it was receiving an inadequate return in general and on its new investment in particular, and by showing that the contested order, by its terms, entitled the company to include this investment in its rate base by filing a new rate application. *Id.* at 305-306. In fact, had Southbridge waited six months before filing its rate application, the Department's normal accounting procedures would have permitted inclusion of the entire investment at issue in the Southbridge rate base so that a full return on that investment would have been made available.[11] *Id.* at 307. This court, recognizing that the peculiar timing involved in that case led to the exclusion from the rate base at issue of a sizable investment which the Department, under usual circumstances, would include in a rate base, took these unusual circumstances into account and suspended application of the general rule in order to expedite badly needed relief for Southbridge.[12]

No such unusual circumstances attend the application to Fitchburg's case of the Department's general rule on unamortized costs of prematurely abandoned facilities. It seems that application of the Department's general rule will decrease effective rates of return in most cases and subject the application order to a complaint that it causes inadequate rates of return. The circumstances which attend application of the Department's rule in this case thus are typical of their genre, not unusual. Consequently, we

---

[11] The Department had used a year-average test rate base to calculate the Southbridge rate base, rather than the year-end test rate base as Southbridge requested. Use of the Department's method of rate base calculation excluded from the rate base one-half the value of the Cohasse Brook reservoir, a major Southbridge investment completed shortly before its rate application. Consequently, Southbridge received a sharply decreased return on an investment which greatly increased its plant service and storage capacity, despite the fact that its customers were using this new facility. Southbridge apparently had been operating at a net cash loss and presumably presented its rate application early because it was unable to delay any longer. See *id.* at 302-305.

[12] "[T]he company ha[d] been deprived, without opportunity to recapture, of all return on a substantial part of its investments for all the years between and including 1968 and 1974. . . . [F]urther substantial delay should not be occasioned by requiring the company to file a new rate schedule now." *Id.* at 307.

hold that there are no unusual circumstances which render the normal Department rule inapposite in this case.

In alleging confiscatory or otherwise illegal effective returns Fitchburg does not contest the rates of return authorized by the Department, contrast *New England Tel. & Tel. Co.* v. *Department of Pub. Utils.,* 360 Mass. 443 (1971); *New England Tel. & Tel. Co.* v. *Department of Pub. Utils.,* 327 Mass. 81 (1951), but submits evidence of effective rates of return below those authorized during a period preceding and briefly following the Department's order.[13] Therefore, we decide only whether the Department must raise its calculation of Fitchburg's rate base to ensure that Fitchburg will receive in fact the authorized rates of return. Fitchburg has the burden of proof on this issue, *Wannacomet Water Co.* v. *Department of Pub. Utils.,* 346 Mass. 453, 464-465 (1963), and has not shown that its effective return is insufficient to cover its operating costs and to attract capital (see discussion *supra* at 884-885 & note 5), or that the discrepancy between authorized rates of return and effective rates of return is more than a transient phenomenon which rate levels cannot address. See J.C. Bonbright, Principles of Public Utility Rates, at 150-151 (1961).[14] Nor has Fitchburg shown, were the discrepancy permanent and illegal, that inclusion of the unamortized costs of prematurely abandoned property in Fitchburg's rate base would be an appropriate method for handling a confiscatory or otherwise illegal effective return on investment. Consequently, we find that Fitchburg has failed to meet its burden of proof on the issues of confiscatory or otherwise illegal effective rates of return.[15]

---

[13] Note that the Department's order authorized an increase of $2,096,000 in Fitchburg's annual revenues. Thus, the inadequacy of Fitchburg's return on invested capital prior to the order does not speak directly to a present need for an increased return.

[14] Bonbright points out that rate levels necessarily are designed to yield a reasonable rate of return on the *average,* over a period of time. He adds that applications for new rate schedules are designed to realign experience with a theoretical average. *Ibid.*

[15] Fitchburg can reopen the issue of the sufficiency of its returns for departmental consideration and, ultimately, for our consideration by filing a new rate application.

4. In conclusion, we hold that the Department's policy of excluding the unamortized cost of prematurely retired facilities is not of itself erroneous. See *Boston Gas Co.* v. *Department of Pub. Utils.*, 368 Mass. 780, 802-803 (1975). The parties agree that the policy has been applied consistently for the purposes of this case, as required by *Boston Gas Co.* v. *Department of Pub. Utils.*, 367 Mass. at 104 (1975).

In addition, we hold that Fitchburg has failed to prove that the Department's application of this policy to its case produced effective rates of return which are confiscatory or otherwise illegal. There are no unusual circumstances which show that the application to this case of a normal rate base accounting rule lacks substantial evidentiary support or constitutes error of law within the meaning of G. L. c. 30A, § 14 (7). Contrast *Southbridge Water Supply Co.* v. *Department of Pub. Utils.*, 368 Mass. 300 (1975). Furthermore, Fitchburg failed to show that its effective rate of return falls below the range permissible under the United States and Massachusetts Constitutions or violates G. L. c. 30A, § 14 (7).

The case is remanded to the county court where a judgment is to be entered affirming the decision and order of the Department.

*So ordered.*