RUTH F. FRYER *vs.* DEPARTMENT OF PUBLIC UTILITIES (and a companion case[1]).

Suffolk. January 6, 1978. — March 21, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & ABRAMS, JJ.

*Public Utilities. Water Supply Company.*

The Department of Public Utilities did not abuse its discretion in refusing to order a refund to customers of a water company of an increase which was granted in one proceeding and cancelled in a subsequent proceeding or in refusing to suspend the increase during the course of the second proceeding where the evidence in the first proceeding was sufficient to support the increase and where the department was not authorized to grant such a refund. [689-690]

In a proceeding on a petition by customers of a water company challenging the propriety of an increase in rates allowed the company in an earlier proceeding, evidence as to the unreliability of the company's records fully supported the department's ruling that the rates established in the prior proceeding were improper. [690-691]

TWO CIVIL ACTIONS commenced in the Supreme Judicial Court for the county of Suffolk on October 13, 1976, and October 26, 1976, respectively.

The cases were reported by *Abrams, J.*

*Nathan S. Paven* for Frank Armsworthy & others.

*Herbert Baer* for Ruth F. Fryer.

---

[1] Frank Armsworthy & others *vs.* Department of Public Utilities.

*Mitchell J. Sikora, Jr.*, Assistant Attorney General, for the Department of Public Utilities.

HENNESSEY, C.J.    Ruth F. Fryer, d/b/a Dover Water Company (Water Company) and certain interveners, customers of the Water Company (customers), appealed from certain portions of the decision and orders of the Department of Public Utilities (Department) in a 1975 proceeding, D.P.U. 18365 (18365). The appeals were consolidated for hearing. As will be seen, certain orders of the Department in a 1974 decision, D.P.U. 18080 (18080), are relevant. A single justice of this court stayed the order of the Department pending these appeals, and reserved and reported the appeals to this court.

We affirm the decision and orders of the Department. The case is a novel one in several aspects. The facts are as follows. The Water Company was formed in 1961 by its sole proprietress, Ruth F. Fryer. The Department approved its initial schedule of rates and charges in 1963. The Water Company had operated under those rates for eleven years to the time of its application for an increase in 1974. It served 233 residential users spread over an area zoned for lots of one or more acres within the town of Dover. The proprietress ran the Water Company as a family enterprise. Her daughter, as a part time employee, had assisted her with the books. For engineering and labor, she contracted with Dover Pump and Equipment Company (Pump Company), a sole proprietorship of her husband, Paul. For other general labor and assistance she employed her three sons on a part time basis. There were no other part time or full time employees.

Mrs. Fryer's application for a rate increase was her first. She had informed the Dover selectmen, as well as some of her customers, of her intention to seek a rate increase. The Department had timely issued the requisite order of notice of the hearing on the proposed increase, including notice for publication in the Quincy Patriot Ledger.

According to the testimony and records of Mrs. Fryer at the hearing in 18080, the Water Company had never

achieved a profit. She submitted data from test year 1973 extracted from the Water Company's annual return to the Department for that year. Among other things, the 1973 figures showed the Water Company's total operating expenses to have been $49,122, its total operating revenues to have been $42,688 and (after taxes and interest payments) its net income to have been a loss of $31,254. Mrs. Fryer stressed the rising expenses of a necessary purification system as a major factor in the Water Company's ongoing losses. She sought an annual increased rate revenue of $29,536 and thereby projected an annual reduction of the Water Company's loss from $31,254 to an adjusted $5,064. Her testimony and data were the only evidence submitted.

In its decision of December 30, 1974, the Department observed that the "Company's request is a departure from the conventional rate proceeding, in that the proprietor is seeking no return on the investment" and that even the requested increase would result in a minor loss from operations. Consequently it dispensed with computation of a rate base and cost of capital, and allowed the proposed tariff.

On March 31, 1975, the customers filed their petition in protest to the increased rates and charges. The Department issued notice and conducted a public hearing and investigation over five sessions during the summer and fall of 1975. Through the course of the hearings the customers attacked the data supporting the recent rate increase. Through the testimony of a newly retained accountant, the Water Company filed amended annual returns for the years 1972, 1973, and 1974 and conceded the inaccuracy of certain figures in the 1973 return. No accountant had carefully maintained the Water Company's books until its preparation for the 18365 hearing.

The customers attacked a number of the components of the rate increase. Their major contentions follow. First, they questioned the Water Company's depreciation on capital equipment (mains and transmission lines) contributed by developers over the years at no cost to the Water

Company. For the year 1973 such contributions to capital amounted to $25,533.52; for the 1974, $28,448.48.

Second, they challenged the contractual arrangement between the Water Company and the Pump Company. The Pump Company operated and maintained the generating, pumping, and transmission system of the Water Company. In addition, Paul Fryer was employed by the town of Dover as a water inspector and a board of health agent. The service agreement between the water and pump companies had never been reduced to writing. Paul Fryer considered his hourly rate to be $10; his wife regarded it to be $7. The Pump Company's bills to the Water Company had increased by $12,800 from 1972 to 1974. In test year 1973, the Pump Company had billed the Water Company for $20,290 and received $13,650. If Paul Fryer's hourly rate for that year had been $7, his billings would represent 2,988 hours or about sixty hours a week on Water Company work. Paul Fryer's bills and services were reviewed from 1973 forward. He found it difficult to substantiate the time, place, and amount of work for a number of them. Consequently, the customers questioned the need, reasonableness, and accuracy of the service billings and argued that the Water Company's failure to file with the Department or otherwise to disclose a contract with an affiliated company required the exclusion of the contractual expenses from the rate determination under G. L. c. 165, § 4A, and G. L. c. 164, § 85.

Third, the customers contested as an allowable expense the Water Company's interest payments on the unpaid balance of loans from Paul Fryer in the aggregate amount of $13,745 during the period 1972 through 1974. The interest expense paid to the Pump Company for 1974 was $5,646.84. The consumers doubted the arm's-length quality of the loans. They insisted on the exclusion of the interest expense because of the Water Company's failure to seek approval for loans of more than one year from the Department in accordance with G. L. c. 164, § 14. The consumers similarly sought the exclusion of annual interest expenses resulting

from four bank loans never submitted for Department approval by the Water Company and purportedly not used for Company purposes.

Finally, the customers attacked a variety of smaller expenses (1) for lack of reliable documentation, (2) for their intrafamilial character (approximately $20,000 of the Water Company's $37,000 in 1974 expenditures went to members of the Fryer family) and (3) for lack of allocation between Water Company use, household use, and Pump Company use of expenditures (a) for gasoline, (b) for automobile insurance, (c) for family members' health and life insurance, (d) for telephone and household costs, and (e) for advertising. As a remedy they sought the rescission of the rate increase and the refund of the increased charges collected.

In its decision and orders, the Department cancelled the rate increase, refused to order a refund of the collected increase from the Water Company to the customers for lack of statutory authority, and ordered the Water Company to institute certain accounting and recordkeeping practices, including (a) accurate records of capital expenditures, (b) accurate records of ordinary expenditures, (c) a funded depreciation account, and (d) accurate records of all transactions with the Pump Company.

1. We conclude that the Department correctly refused to order a refund to the customers of the increase which was granted in the earlier proceeding, or to suspend the increase during the course of the second proceeding. The customers' argument that the evidence was not sufficient to support the increase is not borne out by the record. In the first proceeding, the only witness was the proprietress of the Water Company, and her undisputed testimony was more than adequate to support the conclusion that, even after the granted increase, the Water Company would receive no return on its investment and would continue to incur minor losses from operation. See G. L. c. 30A, § 1 (6); *Save the Bay, Inc.* v. *Department of Pub. Utils.*, 366 Mass. 667, 684 (1975).

Nor was there error in the Department's determination not to suspend the increase during the second proceeding. While there was substantial evidence at the second proceeding which tended to show that the evidence at the original hearing, on which the Department had relied, was unreliable, there was then (and now remains) sufficient doubt as to adequate rates to support the fairness of this ruling by the Department. At best, this ruling lay within the Department's discretion, and no abuse of discretion was shown.

The customers' claim that the first proceeding was void for lack of notice is also not borne out by the record. On the contrary, the record adequately reflects legal notice.[2]

Finally, the law is clear that the Department may not, in these circumstances, order reimbursement of collected charges to customers. *Newton* v. *Department of Pub. Utils.,* 367 Mass. 667, 677-680 (1975).

2. The Water Company contends that the Department, in the 1975 case, 18365, erroneously placed the burden of proving both the impropriety of existing rates and the propriety of specific new rates on the Water Company; that those burdens should have remained with the complaining customers and the Department throughout the proceedings. Ordinarily the complaining party seeking a change in the existing rates does carry the burden of proving new rates. *Metropolitan Dist. Comm'n* v. *Department of Pub. Utils.,* 352 Mass. 18, 24-25 (1967).

---

[2] The record indicates that on November 19, 1974, the administrative secretary of the Department published an order of notice announcing the terms of the requested increase and scheduling the hearing for December 17. A copy of the notice went to the chairman of the board of selectmen and the town clerk of Dover. On the same day the administrative secretary forwarded a copy of the notice to the Quincy Patriot Ledger with instructions for its publication at least twenty-one days in advance of December 17. The Department's decision in proceeding 18080 specifically refers to "notice to the appropriate public officials." The Department also can claim a certain presumption of regularity in the performance of its ministerial duties. See *Palm Manor Nursing Home, Inc.* v. *Rate Setting Comm'n,* 359 Mass. 652, 655 (1971). In sum, the evidence does not support the claim of inadequate notice.

The customers did present substantial evidence to support the Department's conclusion that the existing rates established in the 1974 proceeding, 18080, were unreasonable. The increase allowed at that time rested on financial data extracted from the Water Company's return for the 1973 test year. In the hearing held in 1975, 18365, the Water Company filed substantially amended returns for the years 1972, 1973, and 1974. These alone discredited the basis of the prior rate increase, but the customers went further and also demonstrated by cross-examination of the Water Company's witnesses, that the Water Company's accounting methods were erroneous in important particulars. Thus the Water Company failed to distinguish between capital and operating expenditures, to allocate expenses between the Water Company, the Pump Company, and the household, to calculate and seek a return on a rate base, to purchase goods and services from family members on an arm's-length basis, and to establish the purpose of certain borrowing.

While it is true that the customers did not establish evidence substantial enough to prove new rates, the foregoing evidence as to the unreliability of the Water Company's records fully supports the Department's ruling that the books and records of the Water Company did not permit the establishment of new rates.

In light of our conclusions it is unnecessary to consider the further argument of the customers and the Department that the Water Company had, during the 18365 proceeding, voluntarily assumed the burden of proving new rates.

3. In this unusual case, the Department reached an equitable and remedial result. It correctly decided that it had no power, under the decisions of this court, to accede to the customers' demand for a refund of collected charges. It acted within its discretion in declining, during the proceedings in 18365, to suspend the increase granted in 18080. In view of substantial evidence that establishment of reliable new rates could not be achieved, the restoring of the rate levels which had existed for many years was clearly the all but inevitable result. We agree with the Department's

contention that the appeals by both the Water Company and the customers are an unfortunate episode of additional time and expense (cf. *Southbridge Water Supply Co.* v. *Department of Pub. Utils.*, 368 Mass. 300 [1975]) and that the Water Company's better effort would be to put its books in order and then to seek a demonstrable rate adjustment, as the Department recommends in its decision. We add that the order which required the Water Company to maintain certain records and accounting practices and to maintain a funded depreciation account was clearly within the Department's powers and was justified by substantial evidence.

4. The cases are remanded to the county court where judgment is to be entered affirming the decision and orders of the Department in D.P.U. No. 18365.

*So ordered.*