LOWELL GAS COMPANY & another *vs*. ATTORNEY
GENERAL.

Suffolk. September 14, 1978. — January 8, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, LIACOS, & ABRAMS, JJ.

*Gas Company. Public Utilities. Attorney General. Department of Pub-
lic Utilities. Administrative Matter. Consumer Protection Act,* Pub-
lic utility. *Fraud. Practice, Civil,* Consumer protection case, Parties,
Motion to dismiss. *Jurisdiction,* Consumer protection case, Ad-
ministrative matter.

The provisions of G. L. c. 164 did not preclude the Attorney General
from maintaining actions against two utility companies for the
commission of unfair and deceptive practices under c. 93A. [41-43]
QUIRICO, J., dissenting.

The provisions of G. L. c. 164 did not preclude the Attorney General
from maintaining common law actions in fraud against two utility
companies. [43-44] QUIRICO, J., dissenting.

The Attorney's General's failure to exhaust administrative remedies
prior to bringing actions against two utility companies alleging
they committed unfair and deceptive practices under G. L. c. 93A
and fraud did not require dismissal of the actions. [44-46] QUIRICO,
J., dissenting.

The provisions of G. L. c. 93A, § 4, did not preclude the Attorney
General from maintaining actions against two utility companies
alleging the commission of unfair and deceptive practices even as-
suming such practices had ceased before the complaints were filed.
[46-48]

The Attorney General had standing to maintain actions against two
utility companies for fraud under the provisions of G. L. c. 12, § 10,
and c. 164, § 78. [48-49]

Allegations in complaints brought by the Attorney General against
two utility companies that the companies committed unfair and
deceptive practices by allocating short-term debt interest expense
to the inventory cost of gas charged to consumers were sufficient to
state claims for relief under G. L. c. 93A [49-50]; even though the
rates charged by the companies had been approved by the Depart-

ment of Public Utilities under c. 164, the acts alleged were not exempt from c. 93A under § 3 (1) (a) [50-53].

In actions brought by the Attorney General against two utility companies alleging that the companies fraudulently allocated short-term debt interest expense to the inventory cost of gas charged to consumers, there was no merit to the companies' contentions that the complaints failed to state a claim for common law fraud since the alleged misrepresentations concerned matters of opinion of law, and not matters of fact. [53-54]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on November 16, 1977.

The case was reported by *Wilkins, J.*

*Reginald H. Howe (George I. Mulhern, Jr.,* with him) for the Lowell Gas Company & another.

*Paula W. Gold,* Assistant Attorney General (*James C. McManus & Catharine W. Hantzis,* Assistant Attorneys General with her) for the Attorney General.

LIACOS, J. The Attorney General brought complaints against Lowell Gas Company and Cape Cod Gas Company (companies), pursuant to G. L. c. 93A, § 4, G. L. c. 12, § 10, G. L. c. 164, § 78, and G. L. c. 231A. The amended complaints allege that the companies, by allocating short-term debt interest expense to the inventory cost of gas charged to consumers, have committed unfair and deceptive practices under G. L. c. 93A (count 1) and common law fraud (count 2). The Attorney General seeks injunctive relief, restitution, and damages for the alleged illegal acts of the companies.

Originally, in September, 1977, the Attorney General brought separate actions in the Superior Court against each of the companies under G. L. c. 93A, § 4. The companies filed a motion to dismiss in each action. Shortly thereafter they filed a petition under G. L. c. 211,§ 4A, in the county court to transfer both actions to this court for hearing and determination of the motions to dismiss. In January, 1978, the single justice ordered that the actions be transferred to the county court and consolidated.

Both the companies and the Attorney General filed requests for admissions of fact in the county court. The Attorney General also filed amended complaints, which are essentially alike, in both actions, on April 27, 1978, adding to each the count alleging common law fraud. The companies filed a consolidated motion to dismiss both amended complaints, and the single justice reserved and reported the motion to dismiss without decision to the full court on the amended complaints, the motion to dismiss, and the admissions of fact.[1] We hold that the motion to dismiss the actions on the pleadings should be denied.

The allegations of the complaints, as well as those inferences favorable to the plaintiff which may be drawn therefrom, are to be taken as true for the purpose of ruling on a motion to dismiss. *Nader* v. *Citron,* 372 Mass. 96, 98 (1977). A summary of the facts as alleged in the Attorney General's complaints is as follows. Lowell Gas Company (Lowell) and Cape Cod Gas Company (Cape Cod) are privately owned gas utility companies, subject to the jurisdiction of the Department of Public Utilities of the Commonwealth (department).[2] Both companies sell gas to consumers pursuant to rates and schedules filed with the department. Lowell and Cape Cod, beginning in 1972 and 1973, respectively, have engaged in the practice of allocating interest expense for short-term debt to the inventory cost of fuel sold to customers. This practice is contrary to the accounting procedures prescribed by the department[3] through an order which has been in effect

---

[1] We decline to regard the motion as one for summary judgment, as the single justice suggests in his reservation we might do. Neither party adequately addresses this issue in its brief. Additionally, a perusal of the record indicates a dispute as to material facts in issue. Thus, this is not an appropriate matter for treatment under Mass. R. Civ. P. 56, 365 Mass. 824 (1974). See *Hub Assocs.* v. *Goode,* 357 Mass. 449, 451 (1970).

[2] See G. L. c. 164.

[3] G. L. c. 164, § 81. "Gas and electric companies or persons engaged in the manufacture and sale or distribution of gas or electricity shall

since 1961.[4] Further, department accounting regulations provide for the submission of questions of doubtful interpretation to the department for consideration and decision.[5]

In spite of these required procedures, the companies allocated interest on short-term debt to the cost of fuel sold to consumers, without submitting the question of the propriety of this practice to the department. On August 1, 1977, the department made clear that it had neither permitted nor ever approved the companies' inclusion of short-term interest in the cost of fuel, and that such prac-

---

keep their books and accounts in a form to be prescribed by the department, and the accounts shall be closed annually, so that a balance sheet can be taken therefrom. Manufacturing companies in which the manufacture of gas or electricity is a minor portion of their business shall be required to keep accounts of the expenses and income of their gas or electric business only."

[4] The department regulation (D.P.U. 4220-A) governing accounting procedures adopted the so called Uniform System of Accounts for Gas Companies.

Account 431 of the Uniform System provides for the recording of interest on short-term debt as follows: "431. *Other Interest Expense.* This account shall include all interest charges not provided for elsewhere. *Items* 1. Interest on notes payable on demand or maturing one year or less from date and on open accounts, except notes and accounts with associated companies. 2. Interest on customer deposits. 3. Interest on claims and judgments, tax assessments, and assessments for public improvements past due. 4. Income and other taxes levied upon bondholders of the utility and assumed by it."

Account 151 describes the costs to be included in cost of fuel in inventory, which is subsequently sold to customers, as follows: "151. *Fuel.* This Account shall include cost of fuel on hand. 1. Invoice price less any cash or other discounts. 2. Freight, switching, demurrage and other transportation charges, not including, however, any charges for unloading from the shipping medium. 3. Excise taxes, purchasing agents' commissions, insurance and other expenses directly assignable to cost of fuel."

[5] General Instruction No. 10 of the Uniform System of Accounts for Gas Companies provides as follows: "10. *Submittal of Questions* To maintain uniformity of accounting, utilities shall submit questions of doubtful interpretation to the Department for consideration and decision."

tice was unacceptable.[6] As a result of this practice, it is alleged that customers of the companies have paid an inflated price for gas. It is further alleged that the overpayments were $1,175,000 to Lowell and $500,000 to Cape Cod.

The Attorney General also alleges in count 2 that the companies' practice of adding interest expense to the cost of gas charged to consumers was done knowingly or without ascertaining easily verifiable facts; that the companies fully intended to deceive both their customers and the department as to the correct cost of gas; that the department and the customers relied on the companies' misrepresentations as to cost of gas; and that the customers of the companies were damaged as a result of that reliance.

The companies' motion to dismiss asserts lack of subject matter jurisdiction, lack of standing, and failure to state a claim on which relief can be granted, as grounds for dismissal of the actions. We address these contentions seriatim.

*Lack of subject matter jurisdiction.* The companies characterize the suit as an impermissible collateral attack on rates lawfully promulgated by the Department of Public Utilities. They claim that, since rates and related accounting and reporting practices of gas companies are subject to regulation by the department under G. L. c. 164, that statutory scheme is exclusive and precludes the courts from taking jurisdiction over such a complaint.

While it is undisputed that suits directly challenging public utility rates as determined by the department may not be brought in the Superior Court, *Boston* v. *Edison Elec. Illuminating Co.*, 242 Mass. 305 (1922),[7] we find this principle inapposite here. Indeed, our view of the essen-

---

[6] Lowell Gas Co., D.P.U. 19037 (August 1, 1977). Cape Cod Gas Co., D.P.U. 19036 (August 1, 1977).

[7] Gas and electric rates approved by the department under G. L. c. 164, § 94, may be challenged in proceedings for judicial review under G. L. c. 25, § 5.

tial character of this case differs markedly from that
propounded by the companies. The Attorney General in
his complaints does not attack the validity of rates as set
forth by the department. Rather, he challenges what he
alleges to be unfair, deceptive (count 1), and fraudulent
(count 2) practices by the companies vis-à-vis both their
customers and the department. He alleges further that
such practices were neither permitted nor approved by
the department.[8]

Proceeding from this perspective, we note that nothing
in G. L. c. 164, either explicitly or implicitly, excludes
application of c. 93A to unfair or deceptive acts or prac-
tices of gas utility companies. Indeed, the language of
c. 164, § 78,[9] clearly implies an expectation that the Attor-
ney General take appropriate action once notified of vio-
lations of law or department orders.[10] We have previously
held, in finding c. 93A applicable to deceptive insurance
practices when c. 176D covered much of the same domain,
that the mere existence of one regulatory statute does not
affect the applicability of a broader, nonconflicting stat-
ute, particularly when both statutes provide for concur-
rent coverage of their common subject matter. *Dodd* v.

---

[8] For the purpose of ruling on the motion to dismiss, we assume no
disclosure by the companies to the department of the practices in
question prior to the 1977 hearings. We also intimate no opinion as to
what effect such a disclosure, if found to have been made, would have
on the outcome of this suit.

[9] G. L. c. 164, § 78. "If any corporation engaged in the manufacture
and sale or distribution and sale of gas or electricity violates or fails
to comply with the provisions of law, or violates or fails to comply with
any lawful order of the department, it shall give written notice thereof
to such corporation and to the attorney general."

[10] As the complaints indicate, the department recognized the Attor-
ney General's prerogative to act on the basis of its findings.

In *Lowell, supra,* and *Cape Cod, supra,* the department stated:
"Because interest has been charged to inventory for five years, the
Commonwealth Intervenors have requested in their brief that the
matter be referred to the Attorney General for remedial action. As a
party to the case, the Attorney General is acquainted with the facts
and he may initiate whatever action, if any, he deems appropriate."

*Commercial Union Ins. Co.*, 373 Mass. 72, 76-77 (1977). Cf.
*SDK Medical Computer Servs. Corp.* v. *Professional Oper-
ating Management Group, Inc.*, 371 Mass. 117, 126 (1976)
(plaintiff can bring c. 93A action for unfair competition
even though the Commissioner of Insurance may have
administrative authority under c. 176D to correct the
allegedly unfair practices). No provision in either c. 164
or c. 93A requires a contrary result here.

The companies claim also that the courts lack jurisdic-
tion as to the common law count alleging fraud. It is true
that the cases relied on by them, such as *Sullivan* v.
*Boston Consol. Gas Co.*, 327 Mass. 163 (1951), *Boston Con-
sol. Gas Co.* v. *Department of Pub. Utils.*, 321 Mass. 259
(1947), *Boston* v. *Edison Elec. Illuminating Co.*, *supra*,
and others make it clear that the reasonableness of rates
set by the department or the validity of collections made
under them cannot be challenged directly in the courts by
private parties or consumers. See *Haverhill Gas Co.* v.
*Findlen*, 357 Mass. 417 (1970). We agree with the compa-
nies' claim that rate determinations by the department
are subject to judicial review only under the provisions of
G. L. c. 25, § 5. However, both the cases cited and the
statute are inapposite for the reason that, as we have
stated, these complaints are not an attack on the reasona-
bleness or validity of rates fixed by the department.
Count 2 alleges fraud by the companies committed on the
department. None of the cases cited by the companies
involves claims of fraud. Further, none of those cases
involves actions brought by the Attorney General.

We need not venture an opinion as to whether the
enactment of G. L. c. 164, placing companies such as these
within the regulatory purview of the department, pre-
cludes any common law action by any party against such
companies, as the companies claim. The power of private
parties to institute legal proceedings is not necessarily
coextensive with that of the Attorney General. Thus,
even if it be assumed that the companies are correct that
the enactment of G. L. c. 164 so modified the common law

as to preempt the jurisdiction of the courts, as well as to defeat the right of private parties to initiate legal action against regulated companies directly in the courts, it does not follow that the same principles apply to a proceeding commenced by the Attorney General. An action by the Attorney General need not violate the principle of equality among customers on which such cases as *Haverhill Gas Co.* v. *Findlen, supra,* rest. There is sufficient basis in statutes other than G. L. c. 93A to permit a common law count for fraud to be brought in the Superior Court by the Attorney General against a company which is part of a regulated industry. See, e.g., G. L. c. 164, § 78, and G. L. c. 12, § 10.[11] The provision of G. L. c. 164, § 78, that the department shall give written notice to the Attorney General when a regulated company under c. 164 "violates or fails to comply with the provisions of law," read together with the provisions of G. L. c. 12, § 10 (quoted below), is ample authority to sustain a common law count in fraud which, as here, alleges a fraudulent intent to violate the law. That the Superior Court has jurisdiction over such an action is clear. G. L. c. 212, § 4. Cf. G. L. c. 93A, § 4.

The companies also argue that the case must be dismissed on account of the Attorney General's failure to exhaust the appropriate administrative remedies.[12] We

---

[11] General Laws c. 12, § 10, as appearing in St. 1960, § 788, provides in part that the Attorney General "shall take cognizance of all violations of law or of orders of courts, tribunals or commissions affecting the general welfare of the people, including . . . unlawful practices . . . for the undue enhancement of the price of articles or commodities in common use, and shall institute or cause to be instituted such . . . civil proceedings before the appropriate state and federal courts, tribunals and commissions as he may deem to be for the public interest."

After gas is extracted from the earth it assumes the character of a commodity and becomes subject to sale and exchange in the same manner as any other article of commerce. 38 Am. Jur. 2d Gas and Oil § 149 (1968). It should be noted that count 2 of the amended complaints alleges, inter alia, a violation of the Uniform System of Accounts for Gas Companies issued by the department pursuant to its authority under G. L. c. 164, § 81.

[12] The companies cite G. L. c. 164, §§ 79, 84, 93, and 94.

have frequently held, as the companies admit, that the Department of Public Utilities is not authorized to order reimbursement of collected charges to customers. *Fryer* v. *Department of Pub. Utils.*, 374 Mass. 685, 690 (1978). *Newton* v. *Department of Pub. Utils.*, 367 Mass. 667 (1975). We have suggested, however, that overcharges may be recovered by an appropriate action, *Metropolitan Dist. Comm'n* v. *Department of Pub. Utils.*, 352 Mass. 18, 27 (1967), including suit under c. 93A, *Southbridge Water Supply Co.* v. *Department of Pub. Utils.*, 368 Mass. 300, 310 (1975).[13] While the doctrine that administrative remedies should be exhausted before resort to the courts is well recognized, see *Gordon* v. *Hardware Mut. Cas. Co.*, 361 Mass. 582, 587-588 (1972), we have also held that where damages for past conduct are sought which cannot be awarded by the agency, the proper course may be to

---

[13] *Daaleman* v. *Elizabethtown Gas Co.*, 77 N.J. 267 (1978), while factually similar at first glance to the instant case, is nonetheless distinguishable on a number of grounds. Most significantly, in finding the plaintiffs' class action complaint to fall within the exclusive jurisdiction of the Board of Public Utility Commissioners, the Supreme Court of New Jersey affirmed the "ample authority" of that agency "to order corrective and remedial action." *Id.* at 272. In contrast, as the case cited above shows, we have held that the Massachusetts Department of Public Utilities lacks similar authority.

Another distinction is found in the contrast between what this court has construed as the broad sweep of c. 93A, see *Dodd* v. *Commercial Union Ins. Co.*, 372 Mass. 72, 76-77 (1977) and the more limited scope of the New Jersey Consumer Fraud Act, aimed, as it is, "basically at unlawful sales and advertising practices designed to induce consumers to purchase merchandise or real estate." *Daaleman, supra* at 270.

Finally, the New Jersey court appears to have based its decision, in part, on its concern as to the plaintiffs' claim for treble damages, the punitive effect of which, if allowed, would be counterproductive because "it is the public users of the utility service on whom the punitive award will fall." *Id.* at 272. No parallel cause for concern appears in this action. The Attorney General seeks injunctive relief with respect to the allegedly deceptive practices, and only such damages as are necessary "to restore to any person [moneys or property] who has suffered any ascertainable loss" by reason of those practices. See c. 93A, § 4, as amended through St. 1972, c. 544.

stay the action rather than dismiss it. *J. & J. Enterprises, Inc.* v. *Martignetti,* 369 Mass. 535, 540-541 (1976). See *SDK Medical Computer Servs. Corp., supra* at 126.

The trial judge, in his discretion, may decide that further administrative proceedings before the Department of Public Utilities are appropriate for determination of the facts relating to both liability and the extent of damages.[14] The action may be stayed pending receipt of a report from the department.[15]

*Lack of standing.* The companies next contend that the Attorney General lacks standing to bring both the c. 93A and the common law fraud claims. They assert, first, that the language of § 4 of c. 93A[16] dictates the conclusion that

---

[14] We note that appeals have been filed by the Attorney General pursuant to G. L. c. 25, § 5, and are pending before the county court (*Attorney Gen.* v. *Department of Pub. Utils.,* Nos. 77-361 and 77-362), which challenge various aspects of the department's determinations in *Lowell, supra,* and *Cape Cod, supra.* The record has not been completed in either of these appeals and hence they are not yet before the full court. The pendency of such appeals does not change our view as to the right of the Attorney General to bring the proceedings in issue here.

The case law is clear that the department does not have authority to order reimbursement of overcharges to consumers; in apparent recognition of this rule, the Attorney General does not seek such reimbursement in his appeals filed pursuant to G. L. c. 25, § 5. Rather, he seeks only formal notice from the department of the companies' violations of the Uniform System of Accounting for Gas and Electric Companies, and findings of fact by the department as to the dollar amount of the alleged overcharges. These appeals do not foreclose the instant suit.

[15] It should be noted that the provisions of G. L. c. 93A, § 9 (7) - (8), though not applicable to an action under § 4, provide some guidance. See *J. & J. Enterprises, Inc.* v. *Martignetti,* 369 Mass. 535, 541 (1976); *Slaney* v. *Westwood Auto, Inc.,* 366 Mass. 688 (1975).

[16] General Laws c. 93A, § 4, as amended through St. 1972, c. 544, provides in pertinent part: "Whenever the attorney general has reason to believe that any person *is using or is about to use* any method, act, or practice declared by section two to be unlawful, and that proceedings would be in the public interest, he may bring an action in the name of the commonwealth against such person to restrain by temporary restraining order or preliminary or permanent injunction the use of such method, act or practice. . . . Said court may issue temporary

the Attorney General was not authorized to bring these actions, since they had terminated the practices complained of before he filed the complaints. The Attorney General's complaints are somewhat ambiguous with regard to whether the companies' allegedly unfair and fraudulent activities had ceased as of the time the suit was filed. The complaints can, however, reasonably be read to imply that these practices were continuing. As such, they survive the motion to dismiss on this ground even assuming the accuracy of the companies' interpretation of § 4.

Our view of § 4 is not, however, congruent with that of the companies in any event. The cases interpreting the Federal Trade Commission Act, whose guidance we are directed to seek,[17] have held that injunctions can be obtained even where the practice is not continuing. As the court in *Goodman* v. *FTC*, 244 F.2d 584, 593 (9th Cir. 1957), stated: "[A]s one of the aims of the statute is to prevent unfair and deceptive practices, [cease and desist] orders will be sustained even when it is clearly shown that the practices have actually been abandoned. The cogent and obvious reason is that there is no guarantee that the practice *might not* be resumed" (emphasis in original).

We further think that, when considered in the context of c. 93A, § 6,[18] and c. 260, § 5A,[19] the broad remedial

restraining orders or preliminary or permanent injunctions and make such other orders or judgments as may be necessary to restore to any person who has suffered any ascertainable loss by reason of the use or employment of such unlawful method, act or practice any moneys or property, real or personal, which may have been acquired by means of such method, act, or practice" (emphasis supplied).

[17] See G. L. c. 93A, § 2 (*b*).

[18] General Laws c. 93A, § 6 (1), as appearing in St. 1969, c. 814, § 3, provides: "The attorney general, whenever he believes a person *has engaged in* or is engaging in any method, act or practice declared to be unlawful by this chapter, may conduct an investigation to ascertain whether in fact such person *has engaged in* or is engaging in such method, act or practice" (emphasis supplied).

[19] General Laws c. 260, § 5A, inserted by St. 1975, c. 432, § 2, states

language of § 4 cannot be read to preclude suits by the Attorney General against parties who have engaged in, but recently suspended, practices violative of c. 93A.

The companies also argue that the Attorney General lacks standing to assert the common law fraud count alleged in the complaints, because G. L. c. 164, § 78, does not provide a statutory grant of standing, and because he did not allege damage to the Commonwealth or one of its agencies as a result of the claimed misrepresentations. Both these contentions miss the mark. Chapter 164, § 78, is not an explicit grant of standing, and the Attorney General does not, and need not, rely on it alone. Rather, as we have noted, G. L. c. 12, § 10, in combination with G. L. c. 164, § 78, lays the foundation for his standing. Further, the Attorney General has properly pleaded the fraud count so as to avoid standing problems. He need not allege that the Commonwealth per se, or any agency thereof, has suffered damage on account of the companies' misrepresentations. Rather, his allegations that the companies deceived, and thereby harmed, consumers were appropriately brought, pursuant to the powers conferred by G. L. c. 12, § 10,[20] and in accord with the Attorney General's common law duty to represent the public interest and to enforce public rights. Cf. *Feeney* v. *Commonwealth*, 373 Mass. 359 (1977) (action of the Attorney General in deciding to prosecute an appeal, contrary to the expressed objections of State officers whom he represented in District Court proceedings, was consistent with his common law duty to represent the public interest).

---

in pertinent part: "Actions arising on account of violations of any law intended for the protection of consumers, including but not limited to the following: ... chapter ninety-three A ... whether for damages, penalties or other relief and brought by any person, including the attorney general shall be commenced only within four years next after the cause of action accrues."

[20] We note that c. 12, § 10, as found in St. 1913, c. 709, is entitled, "An Act to *enlarge* the powers and duties of the attorney-general" (emphasis supplied).

*Failure to state a claim.* Finally, we reach the companies' contention that the complaints fail to state a claim on which relief can be granted. We recognize, at the outset, that the complaints should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Nader* v. *Citron,* 372 Mass. at 98, citing *Conley* v. *Gibson,* 355 U.S. 41, 45-46 (1957). We conclude that the facts as alleged support claims for relief under c. 93A and for common law fraud.

The companies argue that the collection by a gas company of rates approved by the department is lawful and not subject to challenge in a civil action. We do not dispute this general assertion. We have previously held in other contexts that it is not wrongful for a gas company to charge its customers the rates established by an order of the department, and that rates charged by a public service company in accordance with filed schedules allowed by the department cannot be questioned in court proceedings between the customers and the company. Cf. *Sullivan* v. *Boston Consol. Gas Co.,* 327 Mass. 163 (1951) (customers precluded from maintaining suit to obtain refund of fuel charge collected in accordance with formula promulgated by department despite allegations that formula contained certain provisions included by mistake). *Boston* v. *Edison Elec. Illuminating Co.,* 242 Mass. 305 (1922) (customer not permitted to maintain suit alleging that electric rates were unreasonable where rates had been approved by department). The case before us, however, markedly differs from these. The Attorney General's complaints do not allege mistake or unreasonableness in the department's promulgation of rates. Rather, they allege deceptive conduct by the companies intended to subvert the very rate structure whose protection they seek. Fraudulent misrepresentations as to cost of gas cannot become immune from suit by virtue of department promulgation of rates in reliance thereon. To hold otherwise would only serve to encourage deceptive practices of

an increasingly sophisticated variety which, if they eluded detection during the rate-setting and appeals process, would be sheltered from further attack. The Legislature clearly never intended such a result when it enacted c. 164.

The companies next assert that (1) the complaints fail to allege any unfair methods of competition or unfair or deceptive acts or practices within the meaning of G. L. c. 93A, § 2,[21] and (2) in any event the acts alleged are exempt from G. L. c. 93A under § 3 (1) (a),[22] since the companies only charged or collected rates or charges which were filed and approved under G. L. c. 164 as administered by the department. We reject both contentions.

Chapter 93A, § 2, prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." The Attorney General may investigate business practices he believes may be unfair or deceptive, and may bring an action in the name of the Commonwealth against any person he believes is using such practices. *Dodd* v. *Commercial Union Ins. Co.*, 372 Mass. at 75-76. Chapter 93A

---

[21] General Laws c. 93A, § 2, as amended by St. 1978, c. 459, § 2, states: "(a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful. (b) It is the intent of the legislature that in construing paragraph (a) of this section in actions brought under sections four, nine and eleven the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to section 5 (a) (1) of the Federal Trade Commission Act (15 U.S.C. 45 (a) (1)), as from time to time amended. (c) The attorney general may make rules and regulations interpreting the provisions of subsection 2 (a) of this chapter. Such rules and regulations shall not be inconsistent with the rules, regulations and decisions of the Federal Trade Commission and the Federal Courts interpreting the provisions of 15 U.S.C. 45(a)(1) (The Federal Trade Commission Act), as from time to time amended."

[22] General Laws c. 93A, § 3(1)(a), inserted by St. 1967, c. 813, § 1, states: "(1) Nothing in this chapter shall apply to (a) transactions or actions otherwise permitted under laws as administered by any regulatory board or officer acting under statutory authority of the commonwealth or of the United States . . . ."

itself does not explicitly furnish a definition of what constitutes an unfair act or practice made unlawful by § 2 (*a*). We have held in *York* v. *Sullivan*, 369 Mass. 157, 162 (1975), that a practice is "deceptive" if it could reasonably be found to have caused a person to act differently from the way he otherwise would have acted. We have also recognized, as c. 93A, § 2 (*b*), directs us to, Federal court interpretations of the Federal Trade Commission Act. See *Commonwealth* v. *DeCotis*, 366 Mass. 234, 242 (1974), quoting Judge Learned Hand's view that the duty of the Federal Trade Commission "in part at any rate, is to discover and make explicit those unexpressed standards of fair dealing which the conscience of the community may progressively develop." *FTC* v. *Standard Educ. Soc'y*, 86 F.2d 692, 696 (2d Cir. 1936), rev'd in part, 302 U.S. 112 (1937).

Through c. 93A the Legislature has attempted to regulate business activities toward the end of providing proper disclosure of information and a more equitable balance in the relationship of consumers to persons conducting business activities. *DeCotis*, *supra* at 238. The Attorney General's complaints are aimed precisely at furthering these ends. The companies assert, since they were required by G. L. c. 164, § 94,[23] to collect charges according to rates authorized by the department, that their conduct cannot be deemed unfair or deceptive. The argument is

[23] General Laws c. 164, § 94, as amended through St. 1973, c. 816, § 2, sets forth in pertinent part: "Gas and electric companies shall file with the department schedules, in such form as the department shall from time to time prescribe, showing all rates, prices and charges to be thereafter charged or collected within the commonwealth for the sale and distribution of gas or electricity, together with all forms of contracts thereafter to be used in connection therewith. Rates, prices and charges in such a schedule may, from time to time, be changed by any such company by filing a schedule setting forth the changed rates, prices and charges, but until the effective date of any such change no different rate, price or charge shall be charged, received or collected by the company filing such a schedule from those specified in the schedule then in effect . . . ."

circular at best. The companies clearly were not required
by law to engage in fraudulent accounting practices. That
the department was deceived by the companies' misrep-
resentations, and promulgated a mandatory rate in reli-
ance thereon, can hardly serve to legitimize the allegedly
fraudulent activities. Cf. *Schubach* v. *Household Fin.
Corp.*, 375 Mass. 133, 137-138 (1978).[24]

The companies' claim of exemption under G. L. c. 93A,
§ 3(1)(*a*), is similarly misguided. Section 3 (1) (*a*) exempts
"transactions or actions otherwise permitted under laws
as administered by any regulatory board or officer acting
under statutory authority of the commonwealth or of the
United States." Section 3(2) places the burden of proving
the applicability of the exemption on the companies.[25]
The complaints allege that the practices in issue were not
permitted and that in its decisions in *Lowell, supra,* and
*Cape Cod, supra,* the department makes clear that the
policy and practice of allocating interest to inventory is

---

[24] In *Schubach,* we stated: "We reject the argument that an act or
practice which is authorized by statute can never be an unfair or
deceptive act or practice under § 2(*a*) of G. L. c. 93A. The circum-
stances of each case must be analyzed, and unfairness is to be meas-
ured not simply by determining whether particular conduct is lawful
apart from G. L. c. 93A but also by analyzing the effect of the conduct
on the public."

The issue in *Schubach* was whether the filing of collection actions
in locations inconvenient to the defendants' debtors, for the purpose
of precipitating default judgments, could be an unfair practice under
G. L. c. 93A, even though the practice was permitted under the venue
provisions of G. L. c. 223, § 2. We held there that such conduct was
actionable as an unfair practice under G. L. c. 93A, § 2. The companies
claim that *Schubach* is not controlling since the practice in issue there
was merely permitted by statute, while in this case the companies
were required to charge according to rates as approved by the depart-
ment. We reject this analysis. If anything, this case presents an even
more appropriate occasion for the application of § 2, since the fraudu-
lent accounting practices alleged in the complaints were *neither* re-
quired *nor* permitted.

[25] General Laws c. 93A, § 3(2), as amended by St. 1969, c. 814, § 2,
states: "For the purpose of this section the burden of proving exemp-
tion from the provisions of this chapter shall be upon the person
claiming the exemption."

not a permitted practice, that such practice was never approved by the department, and that the companies did not follow the proper procedure outlined in General Instruction No. 10 of the Uniform System of Accounts for Gas Companies. In view of these allegations, the complaints are adequate, and the issue whether the practices of the companies were or are permitted under laws as administered by the department within the § 3(1)(a) exemption is a matter for determination at trial. See *York* v. *Sullivan, supra* at 161; *DeCotis, supra* at 239-240.

Further, the companies assert that the counts for common law fraud fail to state a claim since (1) the Attorney General did not allege injury to himself, to the Commonwealth, or to an agency thereof, as a result of reliance on the misrepresentations alleged, and (2) the alleged misrepresentations concern matters of opinion or law, and not matters of fact. The first of these arguments has already been addressed earlier in this opinion, in our discussion of the question of standing.[26]

We also find the second argument to be without merit. "In this Commonwealth it has been held in a long line of cases that 'the charge of fraudulent intent, in an action for deceit, may be maintained by proof of a statement made, as of the party's own knowledge, which is false, provided the thing stated is not merely a matter of opinion, estimate, or judgment, but is susceptible of actual knowledge; and in such case it is not necessary to make any further proof of an actual intent to deceive.' *Chatham Furnace Co.* v. *Moffatt*, 147 Mass. 403, 404 [1888]." *Snyder* v. *Sperry & Hutchinson Co.*, 368 Mass. 433, 444 (1975), quoting from *Powell* v. *Rasmussen*, 355 Mass. 117, 118 (1969). The true cost of gas used in setting rates by the department is not a matter of opinion. The factors to be included in that cost are set forth in Account 151 of the

---

[26] The complaints also sufficiently allege the elements of common law fraud. See *Maxwell* v. *Ratcliffe*, 356 Mass. 560 (1969); *Barrett Assocs.* v. *Aronson*, 346 Mass. 150 (1963).

Uniform System of Accounts for Gas Companies. Likewise, Account 431 provides for the recording of interest on short-term debt in an account entitled *"Other Interest Expense."* The accounts do not overlap. Further, even assuming no intent by the companies to deceive (although the Attorney General does allege that intent), the true cost of gas, as determined by the inclusion of the appropriate components, was a fact clearly susceptible of actual knowledge. Indeed, General Instruction No. 10 establishes a requirement that just such matters, if at all subject to doubt, be submitted and decided. In view of the ready accessibility of a mechanism intended to resolve these questions and given the standard set forth in *Snyder, supra,* the companies' assertion that their practices merely reflected a matter of opinion and are, therefore, not actionable in a suit for fraud, cannot be sustained.

The motion to dismiss both the c. 93A and the common law fraud claims is denied. The case is remanded to the single justice for hearing or for transfer to the Superior Court.

*So ordered.*


QUIRICO, J. (dissenting). For the reasons which follow, I dissent from the denial of the motions to dismiss the actions brought by the Attorney General against the two public utility companies, Lowell Gas Company (Lowell Gas) and Cape Cod Gas Company (Cape Cod Gas) for recovery of damages for alleged common law fraud and for violation of G. L. c. 93A.

On January 19, 1977, each of the two companies filed with the Department of Public Utilities (department) proposed rate schedules which would increase charges to its customers. The department held a series of hearings thereon and then rendered a separate decision as to each company on August 1, 1977. The Attorney General, acting for himself and for the Massachusetts Consumers'

Council, petitioned for and was allowed full intervention in the proceeding. The portions of the decisions pertinent to this dissent are the following. Lowell Gas, between 1972 and 1976, and Cape Cod Gas, between 1973 and 1976, wrongfully inflated their cost of gas by including therein the amount of interest for short term debt related to the purchase of the gas. Interest on the gas inventory was excluded from the rate base used in computing future rates for the test year involved in the department's decision. The department's discussion of this particular subject concluded with the following statements: "Because interest has been charged to inventory for five years, the Commonwealth Intervenors [Attorney General and the Massachusetts Consumers' Council] have requested in their Brief that the matter be referred to the Attorney General for remedial action. As a party to the case, the Attorney General is acquainted with the facts and he may initiate whatever action, if any, he deems appropriate." The department made no finding of the amount by which the companies' interest allocation practice had resulted in increased rates paid by their customers.

On August 12, 1977, the Attorney General, acting under G. L. c. 25, § 5, appealed from both decisions of the department, and the appeals are still pending before this court for Suffolk County. Each appeal states that the Attorney General is a party in interest and is aggrieved by the department's decision, and it alleges a number of errors in the decision including the following: "The Department's failure to make a finding that the ... Gas Company has overcharged its customers $ ... through the company's Purchased Gas Adjustment Clause is based upon errors of law, is unwarranted by the facts on the record, is unsupported by substantial evidence, is arbitrary and capricious, and is an abuse of discretion." As to Lowell Gas the appeal states that the overcharge was $1,175,545, and as to Cape Cod Gas that it was $503,576.

The actions which are the subject of the motions to dismiss being decided by the court today were com-

menced by the Attorney General on September 12, 1977. The motions are addressed to amended complaints dated April 26, 1978, alleging damages "of approximately $1,-175,000" to customers of Lowell Gas and "of approximately $500,000" to customers of Cape Cod Gas. Thus the Attorney General is pursuing his claims against the two companies along two routes. The first is by his intervention in the administrative proceedings before the department, followed by his appeals which are pending in this court for Suffolk County. The second is by the actions at law originally entered in the Superior Court.

1. The Legislature has enacted a comprehensive statutory scheme for the regulation of public utilities. As a part of that scheme it has delegated to the department the responsibility for initially finding facts, making rulings, and rendering decisions in all proceedings concerning the rates which such companies may charge their customers. G. L. c. 164. As another part of that scheme it has delegated to the Supreme Judicial Court the responsibility for judicial review on "appeal as to matters of law from any final decision, order or ruling of the commission [of the department]." G. L. c. 25, § 5, as appearing in St. 1953, c. 575, § 1. G. L. c. 30A, § 14. *New England Tel. & Tel. Co.* v. *Department of Pub. Utils.*, 372 Mass. 678, 682, 685 (1977). *Fitchburg Gas & Elec. Light Co.* v. *Department of Pub. Utils.*, 371 Mass. 881, 884-885 (1977). *Newton* v. *Department of Pub. Utils.*, 367 Mass. 667, 673-674 (1975). *Cambridge Elec. Light Co.* v. *Department of Pub. Utils.*, 363 Mass. 474, 502-504 (1973).

It is my opinion that under our statutory scheme the route to relief for customers of a public utility company under facts such as those alleged by the Attorney General in the actions at law must start with administrative proceedings before the department, and that parties aggrieved by the results at that level may then obtain judicial review on questions of law. Indeed the Attorney General started out by intervening in the department's proceedings and seeking relief at that level, and followed

that by seeking judicial review of alleged errors in the administrative process. However, while the judicial review proceedings were pending but not yet heard or decided, the Attorney General sought direct judicial relief by the actions at law which he entered in the Superior Court. This court should not sanction the attempted departure from the route prescribed by the Legislature.

I would apply the doctrine requiring the exhaustion of statutorily prescribed administrative remedies before allowing resort to the courts in this situation. The doctrine has been applied to controversies in which the department had power to act but the parties sought relief from the courts instead. *Holyoke Water Power Co.* v. *Holyoke*, 349 Mass. 442 (1965). It has also been applied where the Commissioner of Insurance had power to act with reference to insurance premiums but the parties resorted to the courts instead. *Gordon* v. *Hardware Mut. Cas. Co.*, 361 Mass. 582 (1972). I would enforce the doctrine strictly in this case and in all other cases to which it is applicable. Only by doing so can our courts avoid being inundated by litigation involving controversies reserved for initial fact finding in administrative proceedings. *East Chop Tennis Club* v. *Massachusetts Comm'n Against Discrimination*, 364 Mass. 444 (1973).

The court in this case, in concluding that a Superior Court action is appropriate and that exhaustion of remedies from the department is unnecessary, relies in large part on our prior decisions holding that the department cannot order reimbursement of charges previously paid by customers under approved rates. *Fryer* v. *Department of Pub. Utils.*, 374 Mass. 685, 690 (1978). *Newton* v. *Department of Pub. Utils.*, 367 Mass. 667 (1975). While our prior decisions contain language which appears to leave the department totally without power to order such reimbursements, I would note that the question has never arisen under precisely the kind of allegations made here of fraud by the companies. In any event, I believe it is appropriate to consider the exact boundaries of the de-

partment's power to order relief of the type the Attorney General now seeks in his actions at law. His appeals of the 1977 rate cases furnish a singularly appropriate vehicle for addressing and deciding this question. This court could decide in these appeals whether deliberate misrepresentations of the type alleged by the Attorney General to have been made by the companies to the department provide the appropriate circumstance for a corrective order by the department for the payment of refunds to the customers. See *Daaleman* v. *Elizabethtown Gas Co.*, 77 N.J. 267 (1978).[1]

Resolution of the allegations of fraud and deception made by the Attorney General in the actions at law, and the computation of damages, if any, will of necessity involve technical questions of utility accounting practices and rate calculation procedures. The Attorney General has already presented these questions to the forum best equipped to handle them, that is, the department. Further relief may be forthcoming from the department as a consequence of the pending appeals of the Attorney General. I would foreclose the proliferation of parallel actions at law on these issues until all available administrative remedies and the judicial review thereof are exhausted. I would thus conserve our overtaxed judicial capability for the adjudication of legal questions after completion of the administrative process. *East Chop Tennis Club* v. *Massachusetts Comm'n Against Discrimination, supra.*

2. In my opinion, the comprehensive statutory scheme for the regulation of public utility rates applies equally to bar recovery by the Attorney General from the companies on the count under G. L. c. 93A, as it does on the count for common law fraud. It is true that we held in

[1] The Nebraska Supreme Court, rejecting the argument that its Public Service Commission could not order rate rebates without explicit statutory authority to do so, stated its belief that as a corollary of the Commission's regulatory power it must have the right to order rebates in appropriate circumstances. *Myers* v. *Blair Tel. Co.*, 194 Neb. 55 (1975).

*Dodd* v. *Commercial Union Ins. Co.*, 373 Mass. 72 (1977), that the statutes regulating the insurance industry did not bar an action under c. 93A for damages from alleged unfair and deceptive practices in the handling of claims against the insurer. However, it is also true that in *Gordon* v. *Hardware Mut. Cas. Co.*, *supra*, we held that relief under c. 93A was not available as to premium rates because of the failure to exhaust administrative remedies provided by a statute relating to such rates.