Smith, J.
Plaintiff, the Commonwealth of Massachusetts (Commonwealth), brought this action for a preliminary injunction requiring the defendants, Arden T. Thompson (Thompson), Hutchins Tool & Engineering Co., Inc. (Hutchins) and Precision E.D.M., Inc. (Precision), jointly and severally, to conduct Immediate Response Actions (IRA) at the hazardous waste disposal site in accordance with the Massachusetts Contingency Plan (MCP), 310 CMR §40.0000 et seq. and General Laws c. 2 IE. The Commonwealth asserts that these actions are necessary to abate the continuing flow of hazardous materials from the site into a nearby stream and to respond to the presence of an underground layer of liquid petroleum. For the reasons stated below the Commonwealth’s Motion for a Preliminary Injunction is DENIED.

BACKGROUND

The site, an approximately one-half acre parcel of land, is located at One Panama Street, East Longmeadow, Massachusetts. On the site is a onestoiy concrete block building, divided into five areas, which has been used for light industrial purposes.
Commercial properties abut the site to the north and wetlands abut the site to the south and west. Residential properties and Panama Street lie to the east of the site. Pecousic Brook, located approximately 40 feet behind the building, forms the western boundary. Groundwater at the site tends to flow in a northwesterly direction towards Pecousic Brook.
The defendant, Thompson, has owned the site since 1972. Between 1972 and 1991 Thompson leased the site to several businesses, including machine shops and a furniture stripping company. Hutchins occupied two sections of the building from approximately March 1973 through July 1979 and performed high precision and electrical discharge machining at the site. As part of its operations, Hutchins stored and used oil and hazardous materials, including the chlorinated solvent perchloroethylene (PCE).
Precision occupied the same areas of the building from approximately October 1982 through October 1991 and also performed electrical discharge machining. As part of its operations Precision used SafetyKleen brand solvent for degreasing metal parts. This solvent contained hazardous materials including PCE.
On April 20, 1990, the Department of Environmental Protection (DEP) issued a notice of responsibiliiy (NOR) to Thompson, informing him that the site was contaminated and requesting information regarding the previous and present uses of the site. PCE was present in the surface and subsurface soil at that time. In addition to PCE, Trichloroethylene (TCE) and other volatile organic compounds (VOC) were present in both the groundwater and in the surface water in that part of Pecousic Brook adjacent to and downstream of the site.
After receiving the NOR, Thompson incurred environmental response costs of $29,590.50. In a letter dated October 29, 1991, Thompson informed the DEP that he could no longer afford to finance the response actions required by the DEP.
On February 19, 1991, DEP sent NORs to Hutchins and Precision. Subsequently, on April 14, 1991, Thompson filed a lawsuit against Hutchins and Precision pursuant to G.L.c. 21E, §4A. Specifically, Thompson alleged that the hazardous materials Hutchins and Precision had used and stored at the site caused the contamination.
From 1992 to late 1995, a DEP contractor performed a Limited Site Assessment. The Phase II Assessment revealed that soil and groundwater at the site were contaminated with VOCs, including PCE and TCE.
After the filing of Thompson’s lawsuit the parties discussed settlement options in an effort to equitably divide the costs associated with cleanup. On November 17, 1995, the Commonwealth issued NORs to all parties and stated that they intended to file suit against all of them seeking relief under G.L.c. 2 IE. As a result the private litigation was dismissed and the parties entered into extensive settlement discussions with the Commonwealth.
Throughout the settlement discussions the defendants informed the DEP and the Commonwealth that they did not have the financial resources to implement the “pump and treat” system advocated by the DEP. To support their position the defendants provided their financial records to the DEP and the Commonwealth. In addition, the defendants hired Licensed Site Professionals (LSP) who met with DEP to discuss *516 alternate methods of cleaning up the site. The LSPs recommended that a “venting and sparging” system would be less costly and a more efficient method of cleanup.
Presently, settlement discussions have ended. DEP has incurred costs totaling $141,492.88 in response to the contamination at the site.

DISCUSSION

The Attorney General has a general statutory mandate, in addition to any specific statutory mandate, to protect the public interest. He also has a common law duly to represent the public interest and enforce public rights. Lowell Gas Co. v. Attorney Gen., 377 Mass. 37, 48 (1979).
As such, in a case where the Attorney General is seeking an injunction with regard to alleged statutory violations, the court reviewing the requested relief “needs to consider specifically whether there is a likelihood of statutory violations and how such statutory violations affect the public interest.” Commonwealth v. Mass. CRINC, 392 Mass. 79, 89 (1984). The court is also “required to determine that the requested order promotes the public interest, or alternatively, that the equitable relief will not adversely affect the public.” Id. Unlike the conventional preliminary injunction standard the Attorney General need not demonstrate irreparable harm resulting from alleged violations of statutes designed to protect the public interest. Such harm is in effect irrebuttably presumed. See Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609 (1980); Id.
General Laws c. 2 IE was enacted to foster the cleanup of hazardous material released into the environment. Nassar v. Commonwealth, 394 Mass. 767, 774 (1985). This statute provides an instance where acts in violation of statutory provisions may be enjoined in the public interest.

1. Likelihood of Demonstrating Statutory Violation

The court addresses the first prong of the above test by determining whether the Commonwealth has a likelihood of demonstrating statutory violations. Defendants, in particular Thompson, first assert that financial inability is a defense to G.L.c. 21E. The DEP’s Massachusetts Contingency Plan specifically provides for a financial inability procedure codified at 310 CMR 40.0172. This procedure requires prompt notice to the DEP by a potentially responsible party (PRP) of his financial inability to perform. If the DEP then determines that a response action is beyond the PRP’s financial ability to perform, “such inability shall be a defense to any civil administrative penalty that the Department seeks to assess for non-compliance arising out of such inability with any deadline or time period established pursuant to G.L.c. 21E, 310 CMR 40.0000 and/or any order, permit or approval issued thereunder . . .” 310 CMR 40.0172.
All the defendants have raised the issue of financial inability. Each has voluntarily turned over their financial records so that the DEP and the Commonwealth may review their financial status. Neither the DEP nor the Commonwealth has done so. In addition, the defendants, through LSPs, have investigated alternative and less costly methods of clean-up which have been rejected by the DEP.
In particular, Thompson has spent almost $30,000 of his own money towards emergency response procedures. In 1991 he alerted the DEP that he would no longer be able to finance clean-up operations. Therefore, because Thompson may be exempt from liability due to the financial inability defense, the court finds that the Commonwealth does not have a high probability of demonstrating statutory violations.
Defendants Precision and Hutchins additionally advance the argument that the Commonwealth cannot show statutory violations because they cannot demonstrate that either company is responsible for the pollution at the site. Although the Commonwealth correctly asserts that both Hutchins and Precision may be liable under G.L.c. 21E, §5(a)(2) as a former operator of the site, they fail to take into consideration §5(c) which provides:
[TJhere shall be no liability under paragraph (a) for a person otherwise liable who can establish by a preponderance of the evidence, (a) that the release or threat of release of. . . hazardous material and the damages resulting therefrom were caused by ... (3) an act or omission of a third party other than an employee by a preponderance of the evidence that he exercised due care with respect to the . . . hazardous material, and he took precautions against foreseeable acts or omissions of any third party . . . and that he complied with all notification requirements of section seven . . .
G.L.c. 21E, §5(c).
Specifically, Precision denies that PCE from SafetyKleen contaminated the soil. Rather they claim that Safety-KIeen is an environmentally safe product which contains only 0.05% PCE. Therefore, they contend that §5(c) exempts them from liability under this exception because a third party, Hutchins, was the actual contaminator. Similarly Hutchins alleges that they can prove that although they used PCE, they environmentally disposed of the hazardous material in 55 gallon drums. Accordingly, they maintain that other former operators are responsible for the contamination.
As the Commonwealth cannot demonstrate that either Precision or Hutchins has violated the statute, they have not satisfied the first prong of the preliminary injunction standard.
2. Promotion of Public Interest
The court now turns to the second prong of the test, the promotion of public interest. Despite knowing of *517 hazardous conditions at the site, DEP has taken no action since 1992 when they performed a Limited Phase II Assessment. Dangerous contamination has been known to exist at the site for at least six years. Notwithstanding this knowledge, DEP has performed no remedial or cleanup work although funding for such is authorized through specifically designated funds (G.L.c. 2IE, §4).
DEP’s inaction at the site for such an extended period of time demonstrates that the DEP has deemed it not in the public interest to use public monies for an immediate remedial or cleanup response. Rather, they have chosen to pursue a litigious solution to the problem.
Accordingly, because the Commonwealth has not demonstrated that relief in the nature of a preliminary injunction is in the promotion of public interest, the court finds that they have not satisfied the second prong of the preliminary injunction test.

ORDER

For the above stated reasons, it is hereby ORDERED, that the Commonwealth’s Motion for Preliminary Injunction is DENIED.